**Ricardo MOLINA, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–9570.

Court of Appeals of Alaska.

June 20, 2008.

David D. Reineke, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Ricardo Molina was convicted of felony driving under the influence-that is, driving under the influence when he had two or more prior convictions for DUI or breath-test refusal within the preceding ten years.[1] To prove the predicate prior convictions, the State relied on a prior DUI conviction that Molina had in Arizona.

AS 28.35.030(t)(4)(A) declares that a DUI conviction from another state counts as a prior conviction for purposes of Alaska's felony DUI statute if the other state's DUI law has elements that are "similar" to the elements of DUI under Alaska law-that is, elements similar to those contained in AS 28.35.030(a). The question presented in this appeal is whether the definition of DUI under Arizona law is sufficiently similar to Alaska's definition of DUI so that Molina's Arizona conviction qualifies as a "prior conviction" in this state.

---

1. AS 28.35.030(n).

In *Gundersen v. Anchorage,* 762 P.2d 104, 114–15 n. 7 (Alaska App.1988), this Court interpreted AS 28.35.030(a)(1), the "under the influence" subsection of Alaska's DUI statute, to require proof of a level of impairment that renders the driver incapable of operating a motor vehicle "with the caution characteristic of a person of ordinary prudence who is not under the influence".

The wording of Arizona's DUI law suggests that Arizona requires proof of a lesser level of impairment. Under Arizona Revised Statute § 28–1381(A)(1), it is unlawful "for a person to drive or be in actual physical control of a vehicle ... [w]hile under the influence of intoxicating liquor [or] any drug ... if the person is impaired to the slightest degree."

Molina's argument hinges on the final clause of this definition: "impaired to the slightest degree". Because the Arizona statute allows a conviction upon proof of impairment "to the slightest degree", Molina contends that Arizona's definition of the prohibited level of intoxication is significantly broader than Alaska's definition-and that, therefore, the Arizona statute penalizes a significantly greater range of conduct. Based on this analysis, Molina concludes that the elements of DUI under Arizona law are not sufficiently "similar" to the elements of DUI under Alaska law.

We have examined the Arizona Supreme Court decision that first announced the "impaired to the slightest degree" test, as well as later Arizona decisions interpreting and applying that test. As we explain here, these court decisions show that even though the Arizona test may be worded differently, it is essentially the same as the Alaska test. We therefore conclude that Molina's DUI convictions from Arizona qualify as prior convictions for purposes of the Alaska felony DUI law.

*Is the Gundersen definition of "under the influence" mere dictum?*

■ Before we turn to the Arizona cases construing that state's DUI statute, we must first address an argument raised by the State: the claim that the *Gundersen* definition of "under the influence" was not a holding of that case, but rather only dictum.

In *Gundersen,* the trial judge instructed the jury that being "under the influence" and having a blood alcohol level of .10 or greater were simply alternative ways of committing the same offense—and that the jurors did not have to be unanimous as to which of these two theories was proved.[2] On appeal, Gundersen argued that the "under the influence" theory and the blood alcohol level theory actually described distinct offenses—and that, therefore, it was unconstitutional to allow the jury to return a guilty verdict unless the jurors reached unanimous agreement as to which of these theories was proved.[3]

Here is our explanation of why we rejected this argument:

> We are satisfied that the state legislature and the [Anchorage] municipal assembly have ... determined, as a legislative fact, that a person with .10 grams of alcohol per 210 liters of breath is driving under the influence of alcohol because, [with that level of alcohol in the body, a] person's physical or mental abilities [are] so impaired that he or she no longer has the ability to operate a vehicle with the caution characteristic of a person of ordinary prudence who is not under the influence.
>
> In summary, we are satisfied that the legislature and the municipal assembly intended that the two approaches to driving while intoxicated would simply be variant ways of proving the same thing.

*Gundersen,* 762 P.2d at 114–15 n. 7.

There are two salient assertions in this excerpt from *Gundersen:* first, that the "under the influence" theory and the blood alcohol level theory of DUI were simply "variant ways of proving the same thing", and second, that this "same thing" to be proved was "[the impairment of] a person's physical or mental abilities [to the extent] that he or she no longer has the ability to operate a vehicle with the caution characteristic of a person of

---

**2.** *Gundersen,* 762 P.2d at 114–15 n. 7.

**3.** *See Gundersen v. State,* Court of Appeals File No. A–2112, Appellant's brief at 22.

ordinary prudence who is not under the influence".

These two assertions are not dicta. Rather, they are necessary components of our holding that the two subsections of the DUI statute do not define distinct offenses, but rather only one offense—and our resulting conclusion that jury unanimity is not required when a defendant is alternatively charged with violating (a)(1) of the DUI statute (the "under the influence" subsection) and (a)(2) of the DUI statute (the blood alcohol level subsection).

*Why we conclude that the Arizona DUI statute requires proof of essentially the same level of impairment as the Gundersen test*

■ As explained above, the Arizona DUI statute defines the prohibited level of impairment as "impair[ment] to the slightest degree". This test comes from an eighty-year-old decision of the Arizona Supreme Court, *Hasten v. State*, 35 Ariz. 427, 280 P. 670 (1929).

At the time of the *Hasten* decision, Arizona law defined the offense as "operating a motor vehicle while under the influence of intoxicating liquor".[4] The defendant in *Hasten* claimed that this language meant "under the influence of intoxicating liquor to the extent of impairing to an appreciable degree [one's] ability to operate [a] car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties and using reasonable care, would operate a similar vehicle under similar conditions."[5] The government, for its part, contended that the statute encompassed "any influence of intoxicating liquor, however slight".[6]

The Arizona Supreme Court rejected both of these contentions, declaring that the true meaning of the statute lay between the parties' competing views. The court declared that the statute did not prohibit driving whenever a person was under "any influence" of intoxicating liquor. Rather, the statute prohibited driving when the influence of intoxicants rose to a level at which the person was "to some degree . . . less able,

either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle . . . [an] automobile". But the court also held that if a person's ability to control a motor vehicle was impaired by intoxicants, the statute did not require proof of an "appreciable [*i.e.*, significant] degree" of impairment, but rather only a "perceptible degree" of impairment. Here is the court's discussion of this point:

> The expression, "under the influence of intoxicating liquor," covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors, and which tends to deprive [a person] of that clearness of intellect and control of himself which he would otherwise possess. So one driving an automobile upon a public street while under the influence of intoxicating liquor [violates the statute] even though he drives so slowly and so skillfully and carefully that the public is not annoyed or endangered. In *State v. Noble*, 119 Or. 674, 250 P. 833, the court distinguished between being "in an intoxicating condition" [and being] "under the influence of intoxicating liquor," and held that [under] the latter phrase the state was not bound to prove that the defendant was drunk or intoxicated, but only to show that he was under the influence of intoxicating liquor to some perceptible degree.

*Hasten,* 280 P. at 671.

The court then noted that the Arizona legislature had recently amended the statute to allow prosecution of people who were impaired by alcohol, even though these people had not yet reached the stage of being "intoxicated":

> The Penal Code of 1913 (section 398) prohibited any person "who is intoxicated" from driving a motor vehicle. . . . In 1927[,] the language was changed so that it read "under the influence of intoxicating liquor." Our Legislature . . . evidently became con-

---

**4.** *Hasten,* 280 P. at 670.

**5.** *Id.* at 670–71.

**6.** *Id.* at 671.

vinced that many persons who had not yet arrived at [a] state [of intoxication] were [nevertheless] a menace to public safety when driving a motor vehicle[.]

. . .

With the increasing number and speed of automobiles on our highways, and the appalling number of accidents resulting therefrom, it is not strange that the [legislature] determined that any person, who of his own free will voluntarily lessened in the slightest degree his ability to handle such vehicles by the use of intoxicating liquor, should, while in such condition, be debarred from their use.

*Id.*

The Arizona court then clarified that the statute required proof of driving while in a condition of impairment, and not just proof that a person drove after having imbibed intoxicating liquor:

Nor will it follow, as [the] appellant seems to fear, that every man who has taken a drink falls within the ban of the statute. If that drink does not cause him to be "influenced" in the ordinary and well-understood meaning of the term, he is not affected by the law. If he is so influenced, he must bear the consequences of his voluntary act by refraining from driving an automobile while that influence lasts.

*Id.*

Eight years later, in *Weston v. State,* 49 Ariz. 183, 65 P.2d 652 (1937), the Arizona Supreme Court was asked to revisit its interpretation of the statute in *Hasten.* The defendant in *Weston* contended that the phrase, "under the influence of intoxicating liquor", was unconstitutionally vague because it encompassed both "imperceptible" influences as well as perceptible influences.

As described by the court, Weston argued that "the loose way in which the statute [was] worded" allowed a person to be convicted after having "indulged . . . to the extent of one drink only"—because "even that small quantity [of alcohol] does influence a person to some degree, . . . even though that one drink does not affect [the person] perceptibly or cause him to act in any manner differently

from the way he would have acted had he not taken it." *Weston,* 65 P.2d at 653–54.

In answer to this contention, the Arizona Supreme Court reaffirmed that the statute required proof, not just that a person was under the influence of intoxicants, but that this influence rose to a level where the person's ability to operate a motor vehicle was perceptibly impaired. The court declared that the government was obliged to prove that a defendant was "so affected by intoxicating liquor" that the defendant was "to some degree . . . less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public." *Weston,* 65 P.2d at 654. The court then added:

The contention that [the statute] authorizes the conviction of a person who has taken only one drink, even though that drink did not perceptibly affect him or cause him to act any differently than he would have acted had he not taken it, is without basis[.] [W]hether one was under the influence of intoxicating liquor within the meaning of this statute depends not upon the number of drinks he has taken[,] but on whether those he did take affected him sufficiently to bring him within its purview. One drink might have this effect, depending upon the person, while more than one drink in the case of another would not [—] for intoxicating liquor does not affect all people alike. . . . The important query is, Was the driver of the vehicle under the influence of intoxicating liquor to the extent that he did not have the clearness of intellect or control of himself that he otherwise would have had? . . . [U]nless it is made to appear [from the evidence] that he was under such influence to this extent, the jury would not be justified in . . . finding [the driver guilty].

*Id.*

Toward the end of the twentieth century, the Arizona legislature amended their DUI statute to define the offense in words that echo the *Hasten* test. The statute now prohibits operating a motor vehicle while "under the influence of intoxicating liquor [or] any

drug ... if the person is impaired to the slightest degree." [7]

It is true that the phrase "to the slightest degree" could be read to suggest a very stringent test. But this phrase was judicially construed in *Hasten* and *Weston* (indeed, the phrase originated in *Hasten*), and we must therefore presume that the Arizona legislature intended this phrase to be understood as it was defined in *Hasten* and *Weston*.[8] This expectation is confirmed by modern Arizona appellate decisions.

In *State v. Morales*, 198 Ariz. 372, 10 P.3d 630, 631 (App.2000), the court noted that Arizona Criminal Jury Instruction 28.692(A)(1) defines the phrase "impaired to the slightest degree" as requiring proof that "[t]he defendant's ability to drive a motor vehicle was lessened to the slightest degree by reason of being under the influence of intoxicating liquor." And in *State v. Secord*, 207 Ariz. 517, 88 P.3d 587 (App.2004) (unpublished),[9] it was noted that the state's forensic expert testified that a blood alcohol level of .08 percent "is the first threshold at which scientists will conclude that a person is necessarily impaired 'to the slightest degree' [as that phrase is understood in Arizona law]." *Id.* at 596 n. 12 (Eckerstrom, J., dissenting).

In other words, under Arizona law impairment "to the slightest degree" means essentially the same thing as the *Gundersen* test. Both tests require proof that, because of the influence of intoxicants, the operator of a motor vehicle was deprived to a perceptible degree of their normal mental and physical capacity to control the vehicle.

For these reasons, we conclude that the elements of Arizona's DUI statute are "similar" to the elements of DUI under Alaska law—and that, therefore, Molina's prior conviction for violating the Arizona statute qualified as a prior conviction for the purpose of assessing whether he was guilty of felony DUI in this state.

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

**7.** This statute was originally enacted in 1995 as Arizona Statute § 28–2881. *See* Arizona Laws 1995, Ch. 147, § 12. The statute was scheduled to take effect on October 1, 1997. Before that effective date, the statute was renumbered as § 28–1381 by Arizona Laws 1996, Ch. 76, § 3 (which likewise took effect on October 1, 1997).

**8.** *See Patterson v. State*, 708 P.2d 712, 716 (Alaska App.1985) ("[I]t is a well-established principle of statutory construction that when the legislature re-enacts language that has previously been judicially construed, [the legislature] is presumed to be aware of the previous construction and to [be using] the language in the sense given it by the court."), citing *Hart v. State*, 702 P.2d 651, 655 (Alaska App.1985). *See also* Norman J. Singer, *Sutherland on Statutes and Statutory Construction* (6th ed., 2000 revision), § 49.09, Vol. 2B, pp. 103–112.

**9.** The Arizona Supreme Court later de-published this opinion pursuant to Arizona Supreme Court Rule 111(g): *State v. Secord*, 210 Ariz. 232, 109 P.3d 571 (2005).