NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JERRY GENE INGA,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12067
Trial Court No. 3PA-13-1048 CR

O P I N I O N

No. 2638 — March 1, 2019

Appeal from the Superior Court, Third Judicial District, Palmer, Kari C. Kristiansen, Judge.

Appearances: Nancy Driscoll Stroup, Law Office of Nancy Driscoll Stroup, Palmer, under contract with the Office of Public Advocacy, Anchorage, for the Appellant. Brittany L. Dunlop, Assistant District Attorney, Palmer, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD, writing for the Court.
Judge MANNHEIMER, concurring.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Following a jury trial, Jerry Gene Inga was convicted of second-degree sexual assault and third-degree assault.[1] According to the State's evidence, Inga committed these offenses while he was alone at his stepfather's house with his stepfather's girlfriend, L.P. Inga had been violent towards L.P. in the past, and his stepfather had previously promised L.P. that he would not leave Inga and L.P. together again.

While Inga and L.P. were watching television, Inga propositioned L.P. to have sex with him. L.P. told him no. Inga then grabbed L.P.'s breasts. (This was the basis of the second-degree sexual assault charge.) L.P. pushed Inga away. Inga then pulled L.P. to the ground and beat her brutally. During this beating, Inga straddled L.P. and tried to restrain her hands above her head. L.P. suffered multiple injuries from this assault, including a fractured nose. (This was the basis of the third-degree assault charge.)

At trial, Inga's attorney conceded that Inga was guilty of beating up L.P., but the defense attorney contended that Inga never grabbed L.P.'s breasts. The attorney argued that L.P. was lying about this aspect of the attack — that she invented a story of sexual assault so that Inga would get in more trouble for the physical assault. The jury rejected the defense attorney's contention and convicted Inga of both sexual assault and physical assault.

On appeal, Inga challenges the sufficiency of the evidence to support his conviction for second-degree sexual assault. Inga concedes that the jury could reasonably have found that he grabbed L.P.'s breasts. But Inga now argues that the State failed to present sufficient evidence of coercion to render Inga's act of grabbing L.P.'s breasts "without consent" as that term is defined in AS 11.41.470(8)(A).

---

[1] AS 11.41.420(a)(1) and AS 11.41.220(a)(5), respectively.

For the reasons explained in this opinion, we conclude that the evidence presented at Inga's trial was sufficient to establish the "without consent" element. We therefore affirm Inga's conviction for second-degree sexual assault.

Inga also separately appeals his sentence, arguing that his sentence is excessive and that the superior court erred in rejecting the proposed mitigator that his conduct was "among the least serious" included in the definition of second-degree sexual assault. We affirm the superior court's rejection of the statutory mitigator, and we conclude that Inga's sentence is not clearly mistaken.

*Factual background and proceedings in the trial court*

Because Inga challenges the sufficiency of the evidence to support his sexual assault conviction, we present the following background facts in the light most favorable to upholding the jury's verdict.[2]

In early May 2013, Inga was with his stepfather and his stepfather's girlfriend, L.P., at the house his stepfather was renting in Big Lake. A few months earlier, there had been an incident where Inga had pushed L.P., and L.P. was therefore aware that Inga could become violent. At that time, Inga's stepfather had promised L.P. that he would not leave Inga and L.P. together again.

Despite this promise, Inga's stepfather left to go to Anchorage, leaving Inga and L.P. to clean the house. After Inga and L.P. had been cleaning for a while, Inga found ten dollars, and they decided to walk to the liquor store and buy alcohol. On the way home, Inga and L.P. were drinking shots of the vodka they had purchased. L.P. later testified that Inga seemed like he was getting upset with her.

---

[2] *See Iyapana v. State*, 284 P.3d 841, 849 (Alaska App. 2012). We note that Inga's appellate attorney improperly relies on the grand jury transcript rather than the trial transcript in certain sections of her brief.

When they arrived back at the house, Inga and L.P. sat on the couch and started watching television. According to L.P.'s testimony at trial, Inga propositioned her for sex. When L.P. said no, Inga grabbed her breasts. L.P. pushed Inga away, and then he began beating her. During the beating, Inga was straddling L.P., trying to restrain her hands above her head, and biting her. L.P. fought back and punched Inga. L.P. testified that she was bitten a couple of times on the face and on her arms and then "somehow I got out of it, and I ran out the side door." L.P. suffered multiple injuries from the assault, including a fractured nose.

In her statement to the police (which was played for the jury), L.P. was asked if Inga had touched her sexually during the assault. L.P. replied, "He grabbed my boobs ... but I did not let him get any further than that." At trial, L.P. confirmed that Inga "grabbed [her] breasts in the course of the assault," and that he did so in a "groping-type way," although it "all happened so fast."

After escaping from the house, L.P. ran barefoot to a neighbor's house located about a quarter-mile away. Inga chased L.P. for part of the way, but eventually he gave up. He was found by the troopers a few hours later walking south on the Parks Highway.

At trial, Inga's defense attorney argued that L.P. was lying about Inga grabbing her breasts, and that L.P. told the trooper that this happened because she wanted to get Inga in even more trouble for the physical assault. During closing argument, the defense attorney replayed L.P.'s interview with the trooper for the jury, emphasizing that L.P. told the trooper that Inga grabbed her breasts only after the trooper asked L.P. if Inga had touched her sexually. The defense attorney also attacked L.P.'s credibility, emphasizing her intoxication and mental health issues.

Following deliberations, the jury convicted Inga of both second-degree sexual assault and third-degree assault. At sentencing, the trial court rejected Inga's

proposed mitigator that his conduct was "among the least serious conduct included in the definition of the offense,"[3] rejecting Inga's contention that this was a "touch-and-go" breast grab. The superior court ultimately sentenced Inga to 13 years with 3 years suspended (10 years to serve) on the second-degree sexual assault and 5 years on the third-degree assault, to run consecutively for a composite sentence of 18 years with 3 suspended (15 years to serve).

This appeal followed.

*Why we conclude that the evidence presented at Inga's trial was sufficient to establish the coercion element of "without consent"*

On appeal, Inga argues that the evidence presented at trial was legally insufficient to support his conviction for second-degree sexual assault.

To prove this charge, the State had to establish (1) that Inga knowingly engaged in sexual contact with L.P. (here, touching L.P.'s breasts),[4] (2) that this sexual contact was "without consent" as that phrase is defined in AS 11.41.470(8)(A), and (3) that Inga acted at least recklessly with respect to the circumstance that the sexual contact was "without consent."[5]

Under AS 11.41.470(8)(A), an act of sexual penetration or sexual contact is "without consent" if:

---

[3]  AS 12.55.155(d)(9).

[4]  *See* AS 11.81.900(b)(60)(A)(i) (declaring that the term "sexual contact" includes "the defendant's ... knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast").

[5]  *See Reynolds v. State*, 664 P.2d 621, 625 (Alaska App. 1983) (holding that, in a prosecution for first-degree sexual assault, the State must prove that the defendant knowingly engaged in sexual penetration with the victim and that the defendant recklessly disregarded the circumstance that the sexual penetration was "without consent").

a person[,] with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of death, imminent physical injury, or kidnapping[.][6]

In other words, to establish that sexual activity occurred without consent, the State must prove that the victim was not willing to engage in the sexual activity, and that the victim was coerced by force or by the threat of force. Thus, the phrase "without consent" refers to a particular type of unwanted sexual activity: unwanted sexual activity that is coerced by force or the threat of force.[7]

For purposes of our criminal code, the word "force" is defined in AS 11.81.900(b)(28) as any "bodily impact, restraint, or confinement, or the threat of imminent bodily impact, restraint, or confinement." However, in the context of sexual offenses, the "bodily impact, restraint, or confinement" that the defendant uses or threatens must be more than simply the bodily impact or restraint inherent in the charged act of sexual penetration or contact.[8]

---

[6] Alaska Statute 11.41.470(8)(B) also provides that an act of sexual penetration or sexual contact is "without consent" if the person "is incapacitated as a result of an act of the defendant." This alternate definition of "without consent" is not at issue in Inga's case.

[7] *See, e.g.*, *Milligan v. State*, 286 P.3d 1065, 1070-71 (Alaska App. 2012).

[8] *See State v. Townsend*, 2011 WL 4107008, at *7-8 (Alaska App. Sept. 14, 2011) (unpublished); *Inga v. State*, 2004 WL 719626, at *5 (Alaska App. Mar. 31, 2004) (unpublished). The requirement that the bodily impact, restraint, or confinement be more than simply the bodily impact or restraint inherent in the charged act of sexual penetration or contact derives from the common law and remains the law in the majority of jurisdictions. *See State v. Jones*, 299 P.3d 219, 228 (Idaho 2013) ("The extrinsic force standard is the traditional view and 'is still the most commonly adopted.'"); *State v. Schenck*, 513 So. 2d 1159, 1163 (La. 1987) (concluding that the use of force "requires use of force in addition to any mere touching or minimum effort exerted in performing the lewd act"); *State v. Marshall*, 253 P.3d 1017, 1028 (Or. 2011) (the force must be "greater in degree or different

(continued...)

In the present case, Inga concedes that the State presented sufficient evidence that Inga knowingly engaged in unwanted sexual contact with L.P. — *i.e.*, that he knowingly touched L.P.'s breasts through her clothing when she did not want him to do so. However, Inga contends that the State failed to present sufficient evidence of the coercion element of "without consent" — that is, he contends that there was insufficient evidence that the sexual touching was "coerced by the use of force."

But, as Chief Judge Mannheimer's concurrence points out, whether coercion exists in a particular case is inherently a fact-intensive inquiry that ultimately turns on the totality of the circumstances present in a given interaction.[9]

Inga argues that the facts of his case are analogous to the facts in *State v. Townsend*, an unpublished decision involving a charge of sexual assault in which a majority of this Court held that the State failed to present sufficient evidence that the victim was "coerced by the use of force."[10] But the facts of *Townsend* are materially different from the facts of Inga's case.

---

[8] (...continued)
in kind from the simple movement and contact that is inherent in the act of touching the intimate part of another"). *See generally* 2 Wayne R. LaFave, *Substantive Criminal Law* §§ 17.3(a) & (b), at 840-50 (3d ed. 2017) (discussing extrinsic force requirement as majority approach and collecting cases).

[9] A totality of the circumstances analysis is consistent with our prior case law construing AS 11.41.420(a)(1) (sexual assault in the second degree) and AS 11.41.410(a)(1) (sexual assault in the first degree). *See, e.g.*, *Jimmy v. State*, 206 P.3d 750, 751 (Alaska App. 2009); *Grandstaff v. State*, 171 P.3d 1176, 1210-11 (Alaska App. 2007); *Ritter v. State*, 97 P.3d 73, 77-78 (Alaska App. 2004); *Nicholson v. State*, 656 P.2d 1209, 1213 (Alaska App. 1982).

[10] *Townsend*, 2011 WL 4107008, at *1.

In *Townsend*, T.M. and his fiancée were walking through a crowded bar, brushing against people.[11] Townsend, dressed in drag, approached T.M. and grabbed T.M.'s penis (through T.M.'s clothing) for a few seconds. T.M. immediately chased after Townsend and reported the incident to a nearby police officer, who arrested Townsend for second-degree sexual assault — *i.e.*, engaging in sexual contact "without consent."[12] When Townsend was arrested, he admitted that he had grabbed the victim's penis. He told the officer that he did not know T.M., and that he grabbed T.M.'s penis because he wanted to "hit on" T.M.[13]

Following Townsend's indictment, Townsend's attorney moved to dismiss the sexual assault charge, arguing that the evidence did not support a finding that Townsend's act of momentarily grabbing T.M.'s penis constituted sexual contact that was "coerced by the use of force." The superior court agreed that there was insufficient proof that Townsend used any force or threat of force beyond the "bodily impact [or] restraint" inherent in the act of touching itself, so the court dismissed the indictment.[14]

When the State appealed the superior court's decision, the case resulted in separate opinions from each of the three members of this Court — with two members of this Court voting to affirm the superior court's decision, but for slightly different reasons. Central to both the lead and concurring opinions, however, was the concept that there is a difference between an act of unwanted sexual touching that a person may find offensive and an act of unwanted sexual touching that is coerced by the use of force or

---

[11]  *Id.*

[12]  *Id.*

[13]  *Id.*

[14]  *Id.*

threat of force.[15]  The former may constitute the criminal offense of first-degree harassment, but it does not constitute the crime of second-degree sexual assault.[16]

In *Townsend*, there was no evidence of force or threat of force, apart from the force inherent in the sexual contact itself.  Nor was there any evidence that the victim felt threatened or fearful.  The same is not true in Inga's case.  *Townsend* involved a momentary grab of a man's genitals in a crowded public bar.  Here, the sexual contact occurred in an isolated location by a man who the victim had good reason to be afraid of.  The sexual contact also occurred immediately after the victim had just unequivocally refused to have sex with the defendant, and the defendant's immediate response to the victim's attempt to resist any further contact was to physically attack her, pushing her down to the floor, straddling her body, and trying to restrain her arms as he did so.

In his briefing on appeal, Inga repeatedly tries to separate his act of grabbing L.P.'s breasts from his ensuing physical attack on L.P. that left her injured, focusing on L.P.'s comment that she momentarily looked towards her cigarettes after pushing Inga away from her breasts.  But when we review a claim of evidentiary insufficiency on appeal, we are required to view the evidence presented at trial — and all reasonable inferences to be drawn from this evidence — in the light most favorable to upholding the verdict.[17]  Viewing the evidence at Inga's trial in that light, we conclude that a fair-minded juror exercising reasonable judgment could find that Inga's grabbing of L.P.'s breasts and his ensuing attack were connected parts of a continuous episode, and that Inga's contact with L.P.'s breasts occurred without consent, as that term is

---

[15]  *Id.* at *1, 5.

[16]  *Compare* AS 11.61.118(a)(2) *with* AS 11.41.420(a)(1).

[17]  *See Iyapana v. State*, 284 P.3d 841, 849 (Alaska App 2012).

defined under Alaska law.[18]  Accordingly, we reject Inga's argument on appeal that the evidence was insufficient to support his conviction for second-degree sexual assault.

*Inga's sentencing arguments*

Inga had one prior felony conviction and multiple prior misdemeanor convictions, many of which involved assaultive behavior.  As a result of his prior felony conviction, Inga faced a presumptive sentencing range of 10 to 25 years' imprisonment for the second-degree sexual assault conviction and a presumptive range of 2 to 4 years' imprisonment for the third-degree assault conviction.[19]

At sentencing, the State established three aggravating factors under AS 12.55.155(c): (c)(8) — that Inga had a history of aggravated assaultive behavior; (c)(21) — that Inga had a history of repeated criminal conduct similar to his present offense; and (c)(31) — that Inga's criminal history included convictions for five or more class A misdemeanors.  Because of these aggravators, Inga's maximum sentence was 99 years' imprisonment for the second-degree sexual assault and 5 years for the third-degree assault.[20]

With regard to the sexual assault conviction, Inga's defense attorney argued that statutory mitigating factor AS 12.55.155(d)(9) should apply — *i.e.*, that Inga's conduct was among the least serious within the definition of second-degree sexual assault.  If proved, this mitigating factor would authorize the sentencing judge to impose

---

[18]  *Cf. State v. Middleton*, 386 N.W.2d 226, 230 (Minn. 1986) ("The criminal sexual conduct statutes do not protect only the victim who submits to a sexual assault. The victim who resists is also protected.").

[19]  *See* AS 12.55.125(i)(3)(B); former AS 12.55.125(e)(2) (2013).

[20]  *See* AS 12.55.155(a)(1), (2); AS 12.55.125(i)(3); AS 12.55.125(e).

a sentence as low as 5 years' imprisonment for the sexual assault conviction.[21]  Inga's attorney argued that this statutory mitigating factor was appropriate in this case because Inga was convicted for briefly grabbing L.P.'s breasts through her clothing, and the second-degree sexual assault statute encompasses much more serious conduct.

The sentencing judge rejected the proposed mitigator.  Based on all the circumstances of this episode, the judge found that Inga's assault on L.P. was more than a "touch-and-go" grabbing of L.P.'s breasts — that it was not a "fleeting" touching that "involve[d] [no] physical harm."  Rather, L.P. was "significantly beaten up" by Inga — and the judge viewed this beating as an integral facet of Inga's sexual assault on L.P., not a separate and discrete incident.

On appeal, Inga renews his argument that the judge should have found mitigator (d)(9).  But the judge's findings of fact are supported by the record, and based on those findings we uphold the judge's rejection of this mitigator.[22]

The three aggravating factors in Inga's case all related to Inga's history of assaultive crimes.  Based on those aggravators, and based on Inga's prior failed efforts on probation, the sentencing judge concluded that Inga's prospects for rehabilitation were poor and that Inga posed a danger to the community, given his history of assaulting "many, many people."  For these reasons, the judge imposed the 5-year maximum sentence for the offense of third-degree assault.

---

[21]  *See* AS 12.55.155(a)(2) & AS 12.55.125(i)(3)(B).

[22]  *See Michael v. State*, 115 P.3d 517, 519 (Alaska 2005) (holding that when an appellate court reviews a sentencing judge's ruling on a proposed mitigating factor, the appellate court applies the deferential "clearly erroneous" standard of review when evaluating the sentencing judge's findings of historical fact, but the appellate court then employs its independent judgment when evaluating whether, under those facts, the mitigating factor is applicable).

However, given the fact that Inga had no prior sexual assaults, the judge decided to impose a sentence at the lower end of the presumptive range for Inga's second-degree sexual assault conviction: 13 years with 3 years suspended, or 10 years to serve. The judge imposed these two sentences consecutively, giving Inga a composite 18 years with 3 years suspended (*i.e.*, 15 years to serve).

On appeal, Inga contends that this sentence is excessive. He argues that the sentencing judge erred when she found that further rehabilitative efforts were unlikely to accomplish anything, and that she also erred by putting too much emphasis on Inga's extensive history of violence.

The question is whether the judge's analysis of these factors was clearly mistaken.[23] We have independently examined the record, and we conclude that the judge's sentencing decision was not clearly mistaken.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[23] *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974) (an appellate court is to affirm a sentencing decision unless the decision is clearly mistaken).

Judge MANNHEIMER, concurring.

I write separately to describe the historical background of our current sexual assault statutes, particularly with regard to the element of "without consent", and also to describe how other states have interpreted the requirement of coercion. I then apply Alaska's law of coercion to the facts of Inga's case.

*The historical background of our sexual assault statutes and the element of "without consent"*

For purposes of Alaska's sexual assault statutes, the phrase "without consent" has a special meaning that differs significantly from its everyday meaning. Under AS 11.41.470(8)(A), unwanted sexual conduct occurs "without consent" only if the person "is coerced by the use of force ... or by the express or implied threat of death, imminent physical injury, or kidnapping".

Thus, the statutory phrase "without consent" does not cover all instances where the other person does not subjectively consent to the sexual activity. Rather, sexual activity occurs "without consent" only if the victim was coerced to engage in the sexual activity by force or by the types of threat specified in the statute. *See* AS 11.41.-470(8)(A).

This statutory definition is a modified version of the common law that applied to the crime of rape. At common law, the crime of rape was defined as "carnal knowledge of a woman forcibly and against her will".[1] These two concepts — "forcibly" and "against the victim's will" were related, but they were not the same.

---

[1] Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (Third Edition 1982), p. 210, quoting *Blackstone's Commentaries on the Laws of England*, Vol. 4, § 210.

The majority view at common law was that these two phrases — "forcibly" and "against the victim's will" — were two separate elements of the crime of rape, and the government was required to prove both of these elements. [2] Thus, even when the woman did not wish to engage in the act of intercourse, there was no rape if the coercion was not "forcible" — for example, if the woman acquiesced in an act of intercourse against her will because the offender threatened to fire her from her job, or threatened to expose some humiliating secret, if she refused. [3]

Before the enactment of Alaska's current criminal code, the crime of rape was defined by former AS 11.15.120(a), a statute that tracked this common-law definition of the crime. Under this former statute, the crime of rape consisted of "carnal knowledge of another person, forcibly and against the will of the other person".

The Commentary to our current criminal code shows that the drafters wanted to abandon this common-law formulation of the crime because they wanted to "[e]liminate[] ... any contention that ... a victim must forcibly resist a sexual assault to the utmost" or "that [the victim's] resistance must continue until the act has been terminated." [4]

In place of "forcibly" and "against the will of the other person", the drafters proposed a new phrase, "without consent". Under this new element of "without consent", the government would be required to prove that the victim, "with or without resisting", was "coerced by the use of physical force against a person or property, or by

---

[2]   *See* Wayne R. LaFave, *Substantive Criminal Law* (Third Edition 2017), §§ 17.3(a) through 17.3(d), Vol. 2, pp. 840-860.

[3]   *See* LaFave, § 17.3(d), Vol. 2, pp. 855-60.

[4]   Commentary to Tentative Draft 11.41.460(6), found in *Alaska Criminal Code Revision Subcommission Tentative Draft*, Vol. 1, pp. 74, 79-80.

the express or implied threat of imminent death, imminent physical injury, or imminent kidnapping to be inflicted on anyone".

The Alaska Legislature ultimately adopted this proposal and codified it in AS 11.41.470(8)(A).

But this new element, "without consent", still tracks the basic elements of common-law rape. The government must prove (1) that the victim was coerced into engaging in sexual activity that they otherwise were not willing to engage in, and (2) that this coercion took the form of force or the types of threat specified in the statute.

Alaska has a statutory definition of "force" which is quite expansive. Under AS 11.81.900(b)(28), "force" includes "any bodily impact" or "threat of imminent bodily impact". Since all sexual contact includes some degree of "bodily impact", one might argue that all sexual contact is, by definition, "coerced by the use of force" if the victim does not subjectively consent to the contact.

While this might appear to be a plausible reading of the two statutes, this would be a significant departure from the rule at common law.

At common law, a non-consensual act of sexual intercourse was deemed "forcible" only if it was achieved by physical compulsion apart from the force or impact inherent in the act of sexual intercourse itself.[5] The common law required proof that the act of intercourse was achieved by some additional degree of force — either proof that the victim resisted and was overcome by force, or proof that the victim would have resisted but was intimidated into submission by force or the threat of imminent force.

In light of this common-law background of modern sexual assault statutes, courts in other states have held that, in prosecutions for sexual assault, the government

_____

[5]   *See* LaFave, § 17.3(a), Vol. 2, pp. 841-46.

must establish that the defendant used more force than simply the touching or "bodily impact" required to accomplish the sexual activity. [6]

Alaska's sexual assault statutes are likewise derived from this common-law root. Although the drafters of our current criminal code replaced the phrase "forcibly and against the will" with the new phrase "without consent", the drafters never indicated that they wanted to eliminate the common-law requirement that the force accompanying the sexual act had to exceed the bodily impact inherent in the sexual act itself.

> *How other states have answered the question of what type or degree of force is required to establish that a sexual act was "coerced by the use of force"*

In a prosecution for sexual assault, the State must prove that the defendant subjected the victim to coercive force or a coercive threat of force, and this force must exceed the bodily impact inherent in the act of sexual contact or sexual penetration itself. But what exactly does this mean?

Some states have divided their sex offenses into different levels — the higher level consisting of sexual activity that is coerced by force, and the lower level consisting of sexual activity where the victim does not consent, but where there is no forcible coercion. Because of this distinction between the levels of sexual offenses, the courts in these states have had to directly address the question of what type or degree of force must be proved when the government alleges that the sexual activity was coerced by force.

---

[6] *See, e.g.*, *People v. Denbo*, 868 N.E.2d 347, 355, 358 (Ill. App. 2007); *Scott-Gordon v. State*, 579 N.E.2d 602, 603-04 (Ind. 1991); *Chatham v. State*, 845 N.E.2d 203, 207-08 (Ind. App. 2006); *State v. Schenck*, 513 So. 2d 1159, 1163 (La. 1987); *Johnson v. Commonwealth*, 365 S.E.2d 237, 240 (Va. App. 1988).

The Oregon Supreme Court's decision in *State v. Marshall*, 253 P.3d 1017 (Or. 2011), is a good example of how courts have resolved this question.

Under Oregon law, nonconsensual sexual contact is third-degree sexual abuse, a class A misdemeanor,[7] unless the state proves that the victim was subjected to "forcible compulsion" — in which case the crime is elevated to first-degree sexual abuse, a class B felony.[8]

Oregon law defines "forcible compulsion" using language that is analogous to the language found in Alaska's definition of "without consent". Under Oregon law, a sexual act is accomplished by "forcible compulsion" if the act is compelled by physical force, or if it is compelled by a threat (express or implied) that the person will be killed or injured, or that the person or someone else will be kidnapped.[9]

In *Marshall*, the Oregon Supreme Court provided a fuller explanation of this concept of "forcible compulsion".

First, if the government charges the defendant with using force against the victim, this force must be greater than, or qualitatively different from, the movement or bodily impact that is inherent in the charged act of sexual contact.[10] Second, the government must prove that there was a causal relationship between the defendant's use of force and the victim's submission to, or engagement in, the charged act of sexual contact.[11] The government need not prove that the force used by the defendant was so violent or so aggravated that the defendant physically overpowered or completely

---

[7]  ORS § 163.415.

[8]  ORS § 163.427(1)(a)(B).

[9]  ORS § 163.305(1)(a)-(b).

[10]  *Marshall*, 253 P.3d at 1025.

[11]  *Id.* at 1023.

physically dominated the victim. [12]  But the defendant's use of force must have been a substantial factor in causing the victim to submit to or engage in the charged act of sexual contact. [13]

Under Oregon law, this question — whether the defendant's use of force or threat of force caused the victim to submit to or engage in sexual contact that they otherwise would not have submitted to or engaged in — does not turn solely on the type or amount of physical force used or threatened by the defendant.  It also turns on the relevant attendant circumstances — such things as the relationship between the defendant and the victim, their relative ages, the differences in their size or strength, and similar matters. [14]

Although the members of this Court do not necessarily endorse all the specifics of the Oregon court's approach to this matter, we agree that the question of coercion is a fact-intensive inquiry that turns on the totality of the circumstances.

*Application of this law to the facts of Inga's case*

As explained in Judge Allard's lead opinion, Inga's defense at trial was that he never touched L.P.'s breasts — that L.P. was lying about this aspect of the attack. Given this defense, the parties did not directly litigate the issue of whether Inga used force or threat of force to coerce L.P. into submitting to the sexual touching.  Rather, the parties litigated whether a sexual touching had occurred at all.

---

[12]  *Id.* at 1027.

[13]  *Id.* at 1024-27.

[14]  *Id.* at 1027.

Now, on appeal, Inga raises a different defense to the State's case: he contends that even if he touched L.P.'s breasts without her *subjective* consent, the State's evidence was insufficient to support a finding that this touching occurred "without consent" as defined in AS 11.41.470(8)(A) — in other words, insufficient to support a finding that L.P. was coerced by force or threat of force to submit or acquiesce to this touching.

Even though Inga did not raise this issue in the trial court, he may raise it on appeal, because our supreme court has held that the question of the sufficiency of the evidence to support a particular verdict is a question of law. [15]

But when a defendant challenges the sufficiency of the evidence to support a criminal conviction, we must view the evidence (and all reasonable inferences to be drawn from it) in the light most favorable to the verdict. [16] Viewed in this light, the evidence presented at Inga's trial supports a finding that his touching of L.P.'s breasts was "without consent".

Inga's primary argument is that his beating of L.P. did not occur until after he grabbed L.P.'s breasts and she pushed his hand away. According to Inga, this fact demonstrates that Inga's touching of L.P.'s breasts could not have been "without consent", since Inga did not employ any greater force than was inherent in the act of touching itself — at least, not until after L.P. resisted the touching.

But as I explained earlier in this concurrence, the question of force must be resolved under the totality of the circumstances. Here, according to the State's evidence, Inga was alone with L.P. in the house when this incident occurred. The violence in the

---

[15]   *See Shafer v. State*, 456 P.2d 466, 467-68 (Alaska 1969); *see also Marshall v. Peter*, 377 P.3d 952, 956 (Alaska 2016).

[16]   *See Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012); *Silvera v. State*, 244 P.3d 1138, 1142 (Alaska App. 2010).

present case was precipitated when Inga propositioned L.P. to have sex with him, and she told him no. It was then that Inga grabbed L.P.'s breasts. L.P. pushed him away — and Inga immediately began beating her. During this beating, according to L.P.'s testimony, Inga was straddling her and trying to restrain her hands above her head.

Viewed in the light most favorable to the jury's verdict, Inga engaged in one continuing assault against L.P. — an assault that was motivated by a desire for sex. Inga initiated this assault immediately after L.P. rejected his verbal sexual advance. And this assault had overtly sexual components: first, Inga's forcible grabbing of L.P.'s breasts, and then Inga's act of straddling L.P. and restraining her hands above her head while he beat her.

If Inga had begun to beat L.P. *before* he grabbed her breasts, we would not be engaged in this debate as to whether that sexual touching was "without consent". But the same principle governs Inga's case, even though he did not beat L.P. until moments after he grabbed her breasts.

Inga committed a physical assault upon L.P. that included sexual contact. A reasonable jury could find that this sexual contact was "without consent" within the meaning of AS 11.41.470(8)(A) — *i.e.*, that the unwanted sexual touching was coerced by the use of force. I therefore conclude that the evidence was legally sufficient to support Inga's conviction for second-degree sexual assault. [17]

---

[17]  *See Iyapana*, 284 P.3d at 848-49; *Silvera*, 244 P.3d at 1142.