NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JOSHUA WILLIAM CONVERSE, | Court of Appeals No. A-14071 |
| Appellant, | Trial Court No. 4FA-20-02826 CR |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | No. 2799 — March 21, 2025 |

Appeal from the District Court, Fourth Judicial District, Fairbanks, Matthew C. Christian, Judge.

Appearances: Jason A. Weiner, Jason Weiner and Associates, PC, Fairbanks, for the Appellant. Kayla H. Doyle, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Wollenberg, Harbison, and Terrell, Judges.

Judge TERRELL.

Joshua William Converse was found lying in the road near a damaged motorcycle. The motorists who found Converse observed him exhibiting signs of intoxication, and a blood test later revealed that he had a blood alcohol content of 0.249 percent.

Converse was charged with driving under the influence under both theories in AS 28.35.030(a) — (1) that he drove while under the influence of an alcoholic beverage ("under the influence" theory), and (2) that he had a blood alcohol content of 0.08 percent or higher "as determined by a chemical test taken within four hours after the alleged operating or driving" ("blood alcohol level" theory).[1] At the close of his trial, the district court instructed the jury on the "under the influence" theory, but declined to instruct the jury on the "blood alcohol level" theory because the court concluded there was insufficient evidence that the blood test occurred within four hours of when Converse drove. The jury found Converse guilty under the theory that the court instructed on, the "under the influence" theory. He now appeals.

Converse first argues that there was insufficient evidence that he drove the motorcycle, and that he did so while under the influence of alcohol. We disagree and conclude that a reasonable juror could find beyond a reasonable doubt that Converse drove while under the influence.

Second, Converse challenges an instruction that advised the jury as to how it could evaluate the blood test result. Although the district court did not instruct the jury on the "blood alcohol level" theory, the court did instruct the jury that it could infer that Converse was under the influence if it found that his blood alcohol content was over 0.08 percent. Converse argues that the district court should not have given this instruction because there was insufficient evidence that the blood test was conducted within four hours of his driving. But the statute that provided the basis for this inference, AS 28.35.033(a), does not contain the four-hour time limit for taking a chemical test that is set out in AS 28.35.030(a)(2). We therefore conclude that it was not error to instruct the jury that it could rely on this inference.

---

[1]   AS 28.35.030(a).

*Factual background and proceedings*

At approximately 7:00 p.m. on June 27, 2020, several motorists traveling along the Steese Highway near Fairbanks came upon a man, later identified as Converse, lying in the road. A damaged motorcycle lay on its side five to fifteen feet away from Converse. The motorists observed that Converse was unconscious and had a head wound. A small amount of blood was flowing down the highway. One of the motorists called 911.

Another motorist later testified that Converse appeared to have urinated on himself and smelled as if he "had just walked out of a bar." As Converse became conscious, a different motorist observed that Converse slurred his words and had the smell of alcohol on his breath as he spoke.

Alaska State Trooper Kenton Mayfield responded to the scene. Mayfield observed the motorcycle lying on its side at a point where the highway took a left-hand curve. Mayfield testified that the road conditions were dry and that it was sunny. He noticed that Converse's clothing was ripped and that he had an abrasion on his forearm. Mayfield documented these observations by taking photos.

Mayfield spoke with Converse and recorded their conversation (which was later played for the jury). Converse denied that he drove the motorcycle and claimed that he took a cab to the location. During this conversation, Mayfield observed that Converse had bloodshot and watery eyes, slurred speech, and the smell of alcohol on his breath.

Converse was taken to the hospital in an ambulance, and Mayfield, believing that Converse drove the motorcycle under the influence of alcohol, followed the ambulance to the hospital. Mayfield secured a search warrant to obtain a blood sample from Converse and have it tested for alcohol and controlled substances. A forensic scientist from the Alaska State Crime Lab later testified that he tested Converse's blood and found that the sample had a blood alcohol content of 0.249 percent.

Following a jury trial, Converse was convicted of driving while under the influence.

*Why we conclude that the evidence was sufficient to support Converse's conviction for driving a vehicle while under the influence of alcohol*

After the jury returned its verdict, Converse moved for a judgment of acquittal. The district court denied the motion, finding the evidence sufficient to support the verdict. Converse appeals this ruling.

When reviewing whether there was sufficient evidence to support a verdict, we view the evidence and all reasonable inferences in the light most favorable to upholding the verdict.[2] We then ask whether "a fair-minded juror could reasonably find that the State had proven the elements of the offense beyond a reasonable doubt."[3]

Here, the State was required to prove, beyond a reasonable doubt, that Converse (1) knowingly drove or operated a motor vehicle, and (2) was under the influence of alcohol when he drove or operated a motor vehicle.[4] We conclude that the evidence was sufficient to prove both of these elements.

Regarding the first element — that Converse drove or operated a motor vehicle — the passing motorists and Trooper Mayfield all testified that they discovered Converse lying five to fifteen feet away from a damaged motorcycle. The witnesses observed a small amount of blood flowing down the highway. One witness testified that Converse was unconscious when she first arrived. Converse's clothing was ripped, he had an abrasion on his left arm, and he was bleeding from a head wound. Mayfield's

---

[2]   *Stacy v. State*, 500 P.3d 1023, 1032 (Alaska App. 2021); *Williams v. State*, 486 P.3d 1134, 1138 (Alaska App. 2021) (citing *Inga v. State*, 440 P.3d 345, 350 (Alaska App. 2019)).

[3]   *Stacy*, 500 P.3d at 1032; *see also Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012) (citing *Morrell v. State*, 216 P.3d 574, 576 (Alaska App. 2009)).

[4]   AS 28.35.030(a)(1).

photos, which the State introduced into evidence, showed that the motorcycle was damaged. Mayfield also testified that he did not see any evidence at the scene to suggest that someone besides Converse had driven the motorcycle. Based on this evidence, a fair-minded juror could reasonably find that Converse had knowingly driven the motorcycle and had been in an accident which resulted in the injuries to his person and the damage to the motorcycle.

Turning to the second element — that Converse was under the influence of alcohol when he drove the motorcycle — one of the motorists testified that Converse was combative, his speech was slurred, and he smelled like alcohol. She explained that she knew the smell because she "used to be a drinker." Another witness testified that Converse had urinated on himself and smelled "as if someone had just walked out of a bar." Trooper Mayfield testified that Converse had bloodshot and watery eyes, slurred speech, and the smell of alcohol on his breath. The forensic analyst from the state crime lab testified that Converse had a blood alcohol content of 0.249 percent, based on a blood sample taken two hours after the 911 call. A fair-minded juror could reasonably find, based on this evidence, that Converse was under the influence of alcohol when he drove the motorcycle.[5]

Converse argues that the evidence could also support the conclusion that the motorcycle was driven by someone else, that it hit him, and that the driver fled the scene. He emphasizes that no one saw him driving and that he consistently denied driving the motorcycle. Converse also points out, *inter alia*, that the state crime lab did not test his blood for drugs, the paramedic used an alcohol swab on his wounds and

---

[5]  The district court instructed the jury that a person is "under the influence" when their "physical or mental abilities are impaired" such that they cannot drive with the same degree of "caution" as a sober person "of ordinary prudence." This standard derives from our decisions interpreting the "under the influence" theory in AS 28.35.030(a)(1). *See Molina v. State*, 186 P.3d 28, 29-30 (Alaska App. 2008) (citing and quoting *Gundersen v. Municipality of Anchorage*, 762 P.2d 104, 114-15 n.7 (Alaska App. 1988)).

administered pain medication to him, and two of the witnesses did not testify that Converse smelled of alcohol.

But Converse views the evidence in the light most favorable to himself, rather than in the light most favorable to the verdict. Viewing the evidence in the proper light, we conclude that the evidence was sufficient for a reasonable juror to find that Converse drove the motorcycle while under the influence of alcohol.

*Why we conclude that the district court did not err in instructing the jury on the inferences arising from the chemical test result*

As explained above, Alaska's driving under the influence statute, AS 28.35.030(a), contains two separate theories of liability. The statute reads as follows:

> A person commits the crime of driving while under the influence of an alcoholic beverage, inhalant, or controlled substance if the person operates or drives a motor vehicle or operates an aircraft or a watercraft
>
> (1) while under the influence of an alcoholic beverage, intoxicating liquor, inhalant, or any controlled substance, singly or in combination; or
>
> (2) and if, as determined by a chemical test taken within four hours after the alleged operating or driving, there is 0.08 percent or more by weight of alcohol in the person's blood or 80 milligrams or more of alcohol per 100 milliliters of blood, or if there is 0.08 grams or more of alcohol per 210 liters of the person's breath.

Converse was charged under both of these theories, but the district court declined to instruct the jury on the second theory — the "blood alcohol level" theory — because it concluded that there was insufficient evidence that the blood test was taken within four hours of Converse's driving. The court instructed the jury only on the first theory that Converse was "under the influence" when he drove, and this was the theory under which he was convicted.

A separate statute, AS 28.35.033(a), sets forth presumptions that may apply, depending on a person's blood alcohol content, in proceedings where the person is alleged to have driven under the influence.[6] Under the statute, a blood alcohol content of 0.04 percent or less gives rise to a presumption that the person was not under the influence when they drove.[7] A blood alcohol content between 0.04 and 0.08 percent does not give rise to any presumption.[8] And a blood alcohol content of 0.08 percent or higher gives rise to a presumption that the person was under the influence when they drove.[9] These presumptions are rebuttable: "Except as provided in AS 28.35.030(s), the provisions of (a) of this section may not be construed to limit the introduction of any other competent evidence bearing upon the question of whether the person was or was not under the influence of intoxicating liquor."[10]

In criminal cases, a court is prohibited by Alaska Evidence Rule 303(a)(1) from instructing the jury that a presumption *requires* it to find a particular fact merely because it also finds an antecedent fact or group of facts; rather, the rule requires an applicable presumption to be couched in the language of a permissive inference.[11] Based on the interplay between AS 28.35.033(a) and Evidence Rule 303(a)(1), the district court instructed the jury that it may, but was not required to, infer that Converse

---

[6]  AS 28.35.033(a).

[7]  AS 28.35.033(a)(1).

[8]  AS 28.35.033(a)(2).

[9]  AS 28.35.033(a)(3).

[10]  AS 28.35.033(c).

[11]  Alaska Evidence Rule 303(a)(1) requires judges to "instruct the jury that it may, but is not required to, infer the existence of the presumed fact from the proved fact," but goes on to state that "no mention of the word 'presumption' shall be made to the jury."

was under the influence of alcohol when he drove if his blood test indicated that he had a blood alcohol content of 0.08 percent or more.

At trial, Converse argued that the instruction should have informed the jury that the inferences only applied if the jury found, as a predicate matter, that Converse's blood was drawn within four hours after he drove or operated a motor vehicle. The court rejected this argument. The court did, however, add language to the instruction clarifying that the relevant question with respect to Converse's guilt was whether he was under the influence "at the time of driving."

On appeal, Converse again argues that the four-hour time limit that appears in the "blood alcohol level" theory in the driving under the influence statute, AS 28.35.030(a)(2), also applies to the presumptions set out in AS 28.35.033(a) He therefore contends that the district court erred by instructing the jury on the inferences that could be drawn from his blood alcohol content.

The proper interpretation of a criminal statute is a question of law that we review *de novo* using our independent judgment.[12] Statutes are construed "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[13] Alaska courts apply a sliding scale approach to statutory interpretation, "under which 'the plainer the language of the statute, the more convincing contrary legislative history must be.'"[14]

The text of AS 28.35.033(a) does not include any time limit between when the driving or operating occurred and when the chemical test was administered in order

---

[12] *Cowan v. State*, 559 P.3d 627, 631 (Alaska App. 2024) (citing *Seaman v. State*, 499 P.3d 1028, 1034 (Alaska App. 2021)).

[13] *Id.* (quoting *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017)).

[14] *Id.* (quoting *Alaska Airlines*, 403 P.3d at 1121-22).

for the presumptions it sets forth to apply.[15] The four-hour time limit appears only in the "blood alcohol level" theory under AS 28.35.030(a)(2).[16] Thus, the plain language of the statute suggests that the four-hour time limit does not apply to the presumptions set forth in AS 28.35.033(a).

The history of the two statutes supports this conclusion. Alaska's driving under the influence statute, AS 28.35.030, dates back to the late 1940s, prior to statehood.[17] Its early form contained only the "under the influence" theory. Alaska Statute 28.35.033, which sets out the varying presumptions which depend on the motorist's alcohol level, was enacted in 1969.[18] Neither the older version of the driving under the influence statute nor the older version of AS 28.35.033(a) included a time limit for tests. That is, when AS 28.35.033 first became law, no four-hour time limit for taking a chemical test existed.

The first appearance of the four-hour time limit came in 1980 when the legislature amended the driving under the influence statute, AS 28.35.030, to add the

---

[15]   *See* AS 28.35.033(a).

[16]   *See* AS 28.35.030(a)(2).

[17]   ACLA § 50-5-3 (1949); *see also* AS 28.35.030 (1962) ("A person who, while under the influence of intoxicating liquor or narcotic drugs, operates or drives an automobile, motorcycle or other motor vehicle upon a public street or highway in the state upon conviction is punishable by a fine of not more than $1,000, or by imprisonment for not more than one year, or both.").

[18]   SLA 1969, ch. 83, § 1. The original version of AS 28.35.033 had different ranges for the presumptions — with a presumption that the person was not under the influence at 0.05 percent or lower, no presumption between 0.05 and 0.10 percent, and a presumption that the person was under the influence at 0.10 percent or more — but it otherwise is largely the same today. The original presumption was also based only on the percent of the weight of alcohol in the person's blood; it did not include the presumptions based on milligrams of alcohol per milliliters of blood or grams of alcohol per liters of breath that are in the current version of the statute.

"blood alcohol level" theory.[19] At the same time, the legislature removed the final presumption — that a person was presumed to be under the influence when their blood alcohol content exceeded a certain level — from AS 28.35.033(a).[20]

Two years later, however, the legislature reinserted the final presumption into AS 28.35.033(a).[21] And, when it did so, it simply restored the earlier language from that statute, without either adding a time limit for chemical tests or referencing AS 28.35.030(a)(2).[22] Given the changes to both statutes within a relatively short span of time, it therefore appears that the legislature did not intend for the four-hour time limit to apply to the presumptions set out in AS 28.35.033(a).

Because the plain language of AS 28.35.033(a) omits a time limit and there is no apparent legislative intent to interpret the statute to the contrary, we conclude that the district court did not err by instructing the jury that it could infer that Converse was under the influence when he drove, if it found that he provided a chemical test showing a blood alcohol content of 0.08 percent or more.[23] Stated differently, we reject

---

[19] SLA 1980, ch. 129, § 10. The 1980 statute set the blood alcohol content level at 0.10 percent.

[20] SLA 1980, ch. 129, § 13.

[21] SLA 1982, ch. 117, § 18.

[22] *Id.*

[23] That does not mean that the time interval between driving and the time a blood or breath sample is given is irrelevant in an "under the influence" theory of prosecution under AS 28.35.030(a)(1). A defense attorney is free to argue to the jury that it should give little weight to results from a chemical test that was administered well after driving. *See Moberg v. Municipality of Anchorage*, 152 P.3d 1170, 1179 (Alaska App. 2007) (noting that a defense attorney may argue to the jury that a chemical test result is untrustworthy or may argue that the court should not admit the chemical test result under Evidence Rule 403 based on the procedures that produced the chemical test result). And where there has been a significant interval between driving and the administration of a chemical test, courts have excluded evidence of chemical test results as more prejudicial than probative under Evidence Rule 403. *See State v. Miller*, 512 N.W.2d 469, 470 (N.D. 1994) (noting a trial

Converse's contention that when a defendant is tried under AS 28.35.030(a)(1)'s "under the influence" theory and the jury is given instructions based on the presumptions in AS 28.35.033(a), that the jury must also be instructed that the chemical test was required to be taken within four hours of driving in order for the presumptions (couched as a permissive inference in the instructions) to apply.[24]

*Conclusion*

The judgment of the district court is AFFIRMED.

---

court's ruling on a motion *in limine* that a blood test result obtained over nine hours after driving was not admissible); *State v. Kubik*, 456 N.W.2d 487, 501 (Neb. 1990) ("In some cases, the delay [between driving and testing] may be so substantial as to render the test results nonprobative of the accused's impairment or breath alcohol level while driving."). Converse did not argue for exclusion of the blood test result on this ground.

[24] Our rejection of Converse's argument on appeal should not be read as an endorsement of the jury instruction that was given in this case. We resolve only the challenge to the jury instruction that was made in this case.