NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| RICHARD LAVERNE WAGNER JR.,<br><br>               Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>               Appellee. | Court of Appeals No. A-11682<br>Trial Court No. 3AN-11-9522 CR<br><br><br>O P I N I O N<br><br><br>No. 2533 — January 27, 2017 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Larry D. Card, Judge.

Appearances:  Kevin Higgins, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.  Timothy W. Terrell, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before:  Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*]  Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In the early morning of August 23, 2011, Richard Laverne Wagner Jr. came to the end of a street, failed to stop, and drove his van into a tree. When the police arrived, Wagner told the officers that he had recently dropped off some out-of-town relatives at their hotel, and that he had then taken some medications and started driving home. Wagner told the officers that, when he came to the end of the street, he attempted to apply his brakes, but he mistakenly pressed the accelerator instead.

Later, however, Wagner changed his story: he told the police that all he remembered was being in his home, and then the next thing he remembered was striking the tree.

Because Wagner admitted drinking and smoking marijuana, he was arrested for driving under the influence. His breath test showed a blood alcohol concentration of .066 percent — below the legal limit. Wagner then consented to a blood test. A subsequent chemical analysis of Wagner's blood showed that he had consumed zolpidem — a sedative that was originally sold under the brand name Ambien, and is now available under several brand names.

Wagner was charged with driving under the influence and driving while his license was revoked.

At Wagner's trial, his defense attorney elicited testimony (from the State's expert witness) that one of the potential side effects of zolpidem is "sleep-driving" — *i.e.*, driving a vehicle without being conscious of doing so.

During the defense case, Wagner took the stand and testified that he had been at home watching television, and then he took his medication and fell asleep. According to Wagner, the next thing he remembered was waking up when he hit the tree and his air bag deployed. Wagner asserted that he remembered nothing about getting into a motor vehicle and driving.

2533

Based on this testimony, Wagner's attorney asked the judge to instruct the jury that the State was required to prove that Wagner consciously drove the motor vehicle. More specifically, Wagner's attorney asked the judge to give this instruction:

> If you find that [Wagner] was under the effects of a prescription medication, [and] that he was not aware of those effects when he consumed the medication, and that he performed an otherwise criminal act while unconscious as a result of this medication, [then] you must find him not guilty of that criminal act.

The trial judge rejected this proposed instruction because the judge ruled that, if Wagner voluntarily took the medication, then Wagner could be found legally responsible for what ensued, even if he was not consciously driving at the time of the crash.

But even though the judge declined to instruct the jury on Wagner's view of the law, the judge did not instruct the jury on *his* view of the law either. Instead, the judge simply gave the jury instructions on (1) the definition of driving under the influence and (2) the definition of acting "knowingly".

When the attorneys delivered their summations to the jury, the defense attorney argued that Wagner had not "knowingly" driven his motor vehicle because Wagner had been sleep-driving under the influence of the zolpidem. In rebuttal, the prosecutor argued that Wagner's ability to carry on detailed conversations with the police showed that he had not been sleep-driving. But the prosecutor also argued that even if Wagner *had* been sleep-driving, Wagner still "knowingly" drove the motor vehicle. In support of this last argument, the prosecutor relied on the concluding sentence of the jury instruction on "knowingly": "A person who is unaware of conduct ... of which the

person would have been aware had he not been intoxicated acts knowingly with respect to that conduct[.]"

The jury convicted Wagner of both charges, and Wagner then filed this appeal.

Wagner's primary claim on appeal is that the jury should have been instructed along the lines that Wagner's attorney proposed — *i.e.*, that if Wagner was sleep-driving, he should be acquitted.

*The correct categorization of Wagner's claim*

Although the attorneys and the judge at Wagner's trial discussed this issue in terms of *mens rea* — *i.e.*, whether Wagner acted "knowingly" when he drove the motor vehicle — Wagner's appellate attorney correctly recognizes that Wagner's proposed defense was actually a claim that Wagner could not be held responsible for the *actus reus* of driving. Wagner does not claim that his act of driving was "unknowing". Rather, he claims that his act of driving was "involuntary".

Normally, a person can not be held criminally responsible for their conduct unless they have engaged in a voluntary act or omission. The term "voluntary act" is defined in AS 11.81.900(b)(66) as "a bodily movement performed consciously as a result of effort and determination". As we explained in *Mooney v. State*, 105 P.3d 149, 154 (Alaska App. 2005), the criminal law defines "voluntary act" as a willed movement (or a willed refraining from action) "in the broadest sense of that term".

But as we are about to explain, a voluntary act is not necessarily a "knowing" act, as that term is used in our criminal code.

Many criminal offenses require proof of a particular type of conduct — *e.g.*, delivering a controlled substance to another person,[1] or warning a fugitive felon of their impending discovery or apprehension.[2] When a crime is defined this way, there will be circumstances when a defendant's willed actions (their "voluntary" acts) will fit the statutory definition of the prohibited conduct, but the defendant will not have been aware that they were engaging in this defined type of conduct.

For instance, a mail carrier or other delivery person may deliver a letter or package without knowing that it contains a controlled substance. Or someone (a neighbor or a news reporter, for example) may unwittingly say or do something that tips off a fugitive felon to their impending discovery or apprehension. In these instances, the person will have performed a "voluntary act", but they will not have "knowingly" engaged in the conduct specified in the statute.

This is not the kind of defense that Wagner wished to raise at his trial. Wagner's attorney did not argue that, even though Wagner knew he was engaging in *some* form of action, Wagner somehow remained unaware that, by his actions, he was putting a motor vehicle into operation.

Rather than raising a defense of "unknowing" conduct, the defense attorney argued that Wagner did not engage in *any* conscious action — that Wagner was essentially asleep, and that he was unaware that he was engaged in activity of *any* kind. This was a claim of involuntariness.

---

[1] *See*, *e.g.*, AS 11.71.030(a)(1).

[2] *See* AS 11.56.770(b)(2).

*Why we reverse Wagner's conviction*

In *State v. Simpson*, 53 P.3d 165 (Alaska App. 2002), this Court recognized that even though the voluntariness of a defendant's conduct is rarely disputed, the requirement of a voluntary act is "an implicit element of all crimes". Thus, "[i]f voluntariness is actively disputed, the government must prove it." 53 P.3d at 169.

The criminal law's concept of involuntariness includes instances where a defendant is rendered unconscious by conditions or circumstances beyond the defendant's control, if the defendant neither knew nor had reason to anticipate this result. *See* Wayne R. LaFave, *Substantive Criminal Law* (2nd ed. 2003), § 9.4 ("Automatism"), Vol. 2, pp. 32-37.

Compare *Solomon v. State*, 227 P.3d 461, 467 (Alaska App. 2010), where this Court ruled that defendants charged with driving under the influence can raise a defense of "unwitting intoxication" if the defendant made "a reasonable, non-negligent mistake concerning the intoxicating nature of the beverage or substance that they ingested".

Having considered these authorities, as well as other authorities cited in the State's brief,[3] we conclude Wagner would have a valid defense to the charges of driving under the influence and driving with a revoked license if (1) he took a prescription dose of zolpidem, (2) he was rendered unconscious by this drug and engaged in sleep-driving, and (3) he neither knew nor had reason to anticipate that the drug would have this effect.

The State argues that even if Wagner articulated a valid involuntariness defense (meaning that the trial judge was wrong when he ruled that Wagner's proposed

---

[3] *People v. Holloway*, 78 Cal.Rptr.3d 770, 782-83 (Cal. App. 2008); *People v. Mathson*, 149 Cal.Rptr.3d 167, 191-93 (Cal. App. 2012); *People v. Garcia*, 113 P.3d 775, 780-82 (Colo. 2005); *State v. Newman*, 302 P.3d 436, 440-43 (Or. 2013).

defense was legally invalid), Wagner should still be procedurally barred from challenging the trial judge's ruling in this appeal.

First, the State argues that Wagner's request for a jury instruction on this issue was untimely. More specifically, the State contends that Wagner's defense of involuntariness falls within the mandate of Alaska Criminal Rule 16(c)(5); this rule declares that defendants must notify the State in advance of trial if they "[intend] to rely upon a defense of alibi, justification, duress, entrapment, or other statutory or affirmative defense."

In its brief, the State offers a lengthy and complicated argument as to why the defense of involuntariness should be deemed to fall within Rule 16(c)(5)'s designation of "statutory or affirmative" defenses. But we need not resolve this issue of statutory interpretation, because the prosecutor at Wagner's trial never argued that the State was prejudiced by any lack of notice. And, in any event, Wagner's trial judge did not rely on the issue of timeliness when he rejected Wagner's proposed defense. Rather, the trial judge reached the merits of Wagner's proposed defense: he ruled — mistakenly — that Wagner's defense was invalid as a matter of law.

Given these circumstances, we will not cut off Wagner's right of appellate review simply because he arguably failed to comply with Criminal Rule 16(c)(5). *See generally Grimmett v. University of Alaska*, 303 P.3d 482, 486 n. 9 (Alaska 2013).

In *Abruska v. State*, 705 P.2d 1261, 1271-72 (Alaska App. 1985), and in *Morgan v. State*, 661 P.2d 1102, 1103 n. 1 (Alaska App. 1983), we held that when a trial court allows a defendant to raise an untimely challenge to an indictment — that is, when the trial court overlooks the untimeliness and reaches the merits of the defendant's challenge — then an appellate court should not reject the claim on forfeiture grounds. We apply that same rule here. Even assuming that the State is correct in arguing that

Wagner was required to raise his involuntariness defense before trial, we will nevertheless review the trial judge's ruling on the merits of Wagner's claim.

The State next argues that Wagner failed to preserve his claim of involuntariness because Wagner's attorney presented no expert testimony to support the assertion that Wagner was sleep-driving as a result of his ingestion of zolpidem. But given the trial judge's ruling (during the State's case-in-chief) that this proposed defense was legally invalid, it is unclear why Wagner's attorney should be expected to present expert testimony on this issue.

One might argue that the trial judge would have acted within his proper authority if he had rejected Wagner's proposed defense because the defense attorney failed to give pre-trial notice of any expert testimony to support it. *See* Alaska Criminal Rule 16(c)(4). But again, the prosecutor did not object on the ground of lack of notice. And the State's own expert (a forensic chemist from the Washington State Toxicology Laboratory) admitted on cross-examination — without objection from the prosecutor — that zolpidem can cause a person to sleep-drive.

The State also faults Wagner for failing to offer any evidence on the question of whether Wagner personally was on notice that zolpidem might have such side effects. But again, the judge had already ruled (before Wagner took the stand) that the proposed involuntariness defense was not legally valid.

The State's final argument on appeal is that, even if the trial judge improperly prevented Wagner's attorney from presenting an involuntariness defense, this error was harmless beyond a reasonable doubt.

The State points to the significant inconsistencies between Wagner's trial testimony and the earlier account of events that Wagner offered to the police at the scene and following his arrest. According to the State, these inconsistencies were so

substantial that no juror could reasonably have thought there was a possibility that Wagner was sleep-driving.

The State is correct that the evidence at Wagner's trial offered many reasons to doubt Wagner's claim of sleep-driving. But as we have explained, Wagner took the stand and testified that (1) he took zolpidem and (2) he had no memory of events between the time he began feeling drowsy at home and the time he awoke in his vehicle with the air bag deploying. It was up to the jury to decide whether Wagner's testimony created a reasonable doubt as to whether he was sleep-driving.

We therefore reject the State's harmless error argument.

*Conclusion*

The judgement of the superior court is REVERSED.