NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

RICHARD DORSEY,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12468
Trial Court No. 3AN-06-06987 CR

O P I N I O N

No. 2689 — January 22, 2021

Appeal from the Superior Court, Third Judicial District, Anchorage, Philip R. Volland, Patrick J. McKay, and Jack W. Smith, Judges.

Appearances: Marcelle K. McDannel, Assistant Public Advocate, and Chad Holt, Public Advocate, Anchorage, for the Appellant. Elizabeth T. Burke, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge WOLLENBERG.

Following a jury trial, Richard Dorsey was convicted of second-degree sexual assault for making hand-to-genital contact with a woman in a grocery store in Anchorage.

On appeal, Dorsey raises three claims.

First, Dorsey argues that the evidence presented at his trial was insufficient to establish that the sexual contact was accomplished by the use of force, as required by the second-degree sexual assault statute. But when we review a claim of evidentiary insufficiency, we are required to view the evidence in the light most favorable to the jury's verdict.[1] Viewing the evidence in this light, we conclude that Dorsey's conviction is supported by sufficient evidence.

Second, Dorsey argues that the trial court erred in ruling that, if Dorsey pursued his proposed involuntary intoxication defense, the court would instruct the jury on the "guilty but mentally ill" verdict. Following the court's ruling, Dorsey declined to pursue his involuntary intoxication defense, and he argues that the court's ruling denied him due process by precluding him from presenting his defense.

The State concedes that the trial court erred in ruling that, if the jury accepted Dorsey's proposed involuntary intoxication defense, it would be obliged to find Dorsey "guilty but mentally ill." We agree. We conclude, however, that the court's error was harmless because Dorsey failed, in the first instance, to articulate a valid defense based on his purported involuntary intoxication.

Finally, Dorsey argues that the trial court erred in declining to find, as a mitigating factor, that his conduct was "among the least serious conduct included within the definition of the offense" for purposes of sentencing.[2] We conclude that the court did not apply the proper analysis, and we therefore remand for reconsideration of this mitigating factor.

---

[1]    *See Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012).

[2]    AS 12.55.155(d)(9).

– 2 –                                                                                  2689

*Underlying facts*

Because Dorsey challenges the sufficiency of the evidence to support his conviction, we present the following background facts in the light most favorable to upholding the jury's verdict.[3]

On the evening of July 3, 2006, S.W. was shopping in a Carrs grocery store in Anchorage. While standing in an aisle looking at a book, S.W. suddenly felt the back of her skirt being lifted. S.W. turned around, and a man, later identified as Dorsey, quickly apologized and told S.W. that he thought she was his ex-girlfriend.

According to S.W.'s testimony, she turned back around and continued reading, and she assumed Dorsey was walking away. But almost immediately, S.W. felt the back of her skirt being lifted for a second time. When she turned around, Dorsey started lifting the front of her skirt. S.W. struggled with Dorsey to keep her skirt down, while he tried to lift it up. During this struggle, S.W. "felt [Dorsey's] fingers press up against [her] vagina." (S.W. was wearing underwear.) At that point, S.W. yelled at Dorsey, and he ran down the aisle.

The encounter between S.W. and Dorsey was captured by the store's video surveillance system. The video showed Dorsey approaching S.W. unnoticed from behind, lifting the back of S.W.'s skirt, and leaning down as if to look under her skirt. The video next showed S.W. turning around to face Dorsey, and Dorsey appearing to speak to S.W. The video then showed Dorsey and S.W. struggling, both bending down with their hands near the hemline of S.W.'s skirt. The entire incident lasted between five and six seconds, and the struggle between Dorsey and S.W. over S.W.'s skirt lasted two video frames — approximately two seconds.

---

[3]  *See Iyapana*, 284 P.3d at 848-49.

As Dorsey fled, S.W. followed him out of the store, and she yelled that she had been assaulted. Several bystanders came to her assistance, and S.W. (and others) called 911. One bystander followed Dorsey as he left Carrs, walked to a nearby restaurant and tried to conceal himself behind some bushes outside the restaurant. When the police arrived, Dorsey emerged from the bushes.

Dorsey waived his *Miranda* rights and was interviewed by the police. In the interview, which was later played at trial, Dorsey alternately said that he had simply bumped into S.W., that he had not touched her at all, and that he was not sure whether he had touched her. Dorsey suggested that he may have lost his balance, and then said, "I don't know if my leg hit her or her leg or her knee or what." Although Dorsey gave conflicting accounts as to whether he had made contact with S.W., he denied touching her genitals. When asked if he touched S.W.'s vagina, Dorsey responded, "Oh, no, I don't — no, that's too deep."

A grand jury indicted Dorsey for second-degree sexual assault for engaging in sexual contact with S.W. without her consent.[4]

*Proceedings*

Prior to trial, Dorsey filed a notice of his possible reliance on the defense of involuntary intoxication. He also filed a notice that, in support of this defense, he planned to call Dr. Paul Craig as an expert witness in neuropsychology.

Dorsey sought to argue that his conduct was the result of an adverse reaction to the prescription muscle relaxant Zanaflex, which he asserted that he had taken for the first and only time about two hours before the assault. Dorsey claimed that the Zanaflex put him in a state of "transient mild delirium," and rendered him unable to

---

[4]  AS 11.41.420(a)(1).

conform his conduct to the requirements of the law. Dorsey submitted proposed jury instructions in support of this defense.

Ultimately, the court ruled that if Dorsey pursued this defense, the court would instruct the jury that, if the jury accepted the defense, it must find Dorsey "guilty but mentally ill." Dorsey elected not to pursue the defense, and the court precluded Dorsey from presenting the testimony of Dr. Craig at trial.

At trial, Dorsey argued that, while he had lifted up S.W.'s skirt, he had not engaged in sexual contact, an assertion he maintained was supported by the surveillance video. The jury was unable to reach a unanimous verdict, and the court declared a mistrial.

Several months later, Dorsey's case proceeded to a second jury trial, with a different judge presiding. Dorsey renewed his request to pursue his involuntary intoxication defense, but the court adopted the original judge's ruling that this defense would trigger an instruction on the "guilty but mentally ill" verdict.[5] Dorsey again declined to pursue the defense. Dorsey argued that he had not engaged in sexual contact and had only intended to lift S.W.'s skirt.

The second jury found Dorsey guilty of second-degree sexual assault.

As a first felony offender, Dorsey faced a presumptive sentencing range of 5 to 15 years.[6] Dorsey proposed three statutory mitigating factors, including that his

---

[5]    At his second trial, Dorsey also initially sought to raise a voluntary intoxication defense, in order to negate the intent element of attempted second-degree sexual assault, which the State decided to pursue as a lesser included offense. The court agreed that intoxication could validly negate the intent element of the attempt charge, but ruled that Dr. Craig would not be permitted to testify to Dorsey's self-serving hearsay statements, absent a further evidentiary foundation. Dorsey did not present Dr. Craig as a witness.

[6]    AS 12.55.125(i)(3)(A).

conduct was among the least serious included within the definition of the offense.[7]  The court rejected all of Dorsey's proposed mitigators and imposed a sentence of 10 years' imprisonment with 5 years suspended and a 10-year term of probation.

This appeal followed.

*Why we conclude that the evidence was sufficient to support Dorsey's conviction*

Dorsey first challenges the sufficiency of the evidence to support his conviction for second-degree sexual assault.  To prove this charge, the State was required to establish that (1) Dorsey knowingly engaged in sexual contact with S.W., (2) the sexual contact was "without consent" as that term is defined in AS 11.41.470(8), and (3) Dorsey acted at least recklessly with respect to the circumstance that the sexual contact was "without consent."[8]  Sexual contact includes "knowingly touching, directly or through clothing, the victim's genitals."[9]

Under AS 11.41.470(8)(A), an act of sexual contact is "without consent" if a person "with or without resisting, is coerced by the use of force . . . or by the express or implied threat of death, imminent physical injury, or kidnapping[.]"[10]  As we explained in *Inga v. State*, under this definition, the State must prove both "that the victim was not willing to engage in the sexual activity, and that the victim was coerced

---

[7]  AS 12.55.155(d)(9).

[8]  AS 11.41.420(a)(1); *Inga v. State*, 440 P.3d 345, 348 (Alaska App. 2019).

[9]  AS 11.81.900(b)(61)(A)(i).

[10]  Under AS 11.41.470(8)(B), "without consent" also includes "incapacitat[ion] as a result of an act of the defendant."  That portion of the definition is not at issue in Dorsey's case.

by force or by the threat of force."[11]  We further explained that the force that the defendant uses or threatens to use "must be more than simply the bodily impact or restraint inherent in the charged act."[12]

On appeal, Dorsey does not dispute that the jury could have reasonably found that he engaged in sexual contact with S.W.  Rather, Dorsey argues that the State failed to present sufficient evidence that he used force beyond that which was necessary to accomplish the sexual contact.  Specifically, he argues that "by the time S.W. had an opportunity to voice a protest to Dorsey's conduct, he had withdrawn his hand and begun to walk away."  Accordingly, Dorsey asserts that the "momentary contact with S.W." was accomplished "by surprise rather than force."[13]

But under our criminal code, "force" is defined as any "bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement."[14]  Viewing the evidence, and all reasonable inferences to be drawn from that evidence, in the light most favorable to the jury's verdict, we conclude that a reasonable juror could conclude that Dorsey's act of touching S.W.'s genitals was "coerced by the use of force" for purposes of Alaska's definition of "without consent."[15]

---

[11]  *Inga*, 440 P.3d at 349.

[12]  *Id.*

[13]  See *State v. Townsend*, 2011 WL 4107008, at *4 (Alaska App. Sept. 14, 2011) (unpublished), in which a majority of this Court concluded that brief sexual contact (*i.e.*, a man grabbing another man's penis in a crowded bar) that was accomplished by surprise was not, as matter of law, sexual assault because the evidence was insufficient to establish that the victim was "coerced by the use of force," as required by the definition of "without consent."

[14]  AS 11.81.900(b)(28).

[15]  *See Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012) ("When [this Court]
(continued...)

In particular, according to S.W.'s testimony, after Dorsey lifted the back of her skirt the second time, she turned around, and Dorsey attempted to lift the front of her skirt. S.W. testified that she was "struggling" and "fight[ing]" with Dorsey to keep her skirt down, while he was trying to lift it up. The police officer who viewed the grocery store surveillance video similarly described the incident as involving "an obvious struggle that last[ed] several seconds." S.W. testified that, at some point during that struggle, she felt Dorsey's "fingers press up against [her] vagina." The jury could reasonably infer from the surveillance footage and testimony that S.W. was fighting to keep Dorsey's hands out of her skirt and that, by the time the sexual contact occurred, S.W. was aware of and actively resisting Dorsey's attempts to get his hands under her skirt.

In his reply brief, Dorsey acknowledges S.W.'s testimony about the struggle, but challenges her credibility and argues that the "sliver of time" shown by the surveillance video was not long enough "for anything more than a grope accomplished by surprise rather than one committed after a struggle."

But we are required to view the evidence in the light most favorable to the jury's verdict. Even if the sexual contact was fleeting, the jury could have reasonably found that it was accomplished by force. Accordingly, we reject Dorsey's challenge to the sufficiency of the evidence supporting his sexual assault conviction.

---

[15] (...continued)
review[s] the sufficiency of the evidence to support . . . convictions, we view the evidence in the light most favorable to the verdict and ask whether a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt." (citation omitted)).

*The litigation surrounding Dorsey's request for an involuntary intoxication instruction and the court's ruling on Dorsey's request*

As we mentioned earlier, prior to Dorsey's first trial, defense counsel filed a notice of possible reliance on the defense of involuntary intoxication. Defense counsel also filed a notice of expert, neurospychologist Dr. Paul Craig.

At several hearings outside the presence of the jury, Dorsey's attorneys explained to the court that, if permitted to testify, Dr. Craig would offer his opinion that, at the time Dorsey engaged in the charged conduct, Dorsey was experiencing a "mild transient delirium" from his ingestion of the prescription muscle relaxant, Zanaflex. The factual basis for Dr. Craig's conclusion was Dorsey's own self-report, during his evaluative interview with Dr. Craig, that he had ingested Zanaflex for the first time prior to the charged incident. The attorneys further explained that Dr. Craig would testify that, due to the resulting delirium, Dorsey "could not conform his conduct to the requirements of the law."

Dorsey's attorneys specifically disclaimed any argument that Dorsey did not know what he was doing at the time of the charged conduct. Rather, the attorneys stated, Dr. Craig would testify that Dorsey was simply "a little bit more impulsive" and "less inhibited" as a result of his ingestion of Zanaflex.

Dorsey's attorneys pointed the court to the defense's proposed jury instructions, which further outlined the contours of Dorsey's potential defense. In particular, Dorsey's attorneys proposed instructing the jury that Dorsey should be absolved of criminal liability if he was involuntarily intoxicated at the time of the charged conduct, and if, as a result, he "lacked substantial capacity to appreciate that his conduct was criminal or wrong or lacked substantial capacity to conform his conduct to

the requirements of the law."[16] Dorsey's attorneys proposed the following definition of involuntary intoxication: "intoxication caused by substances ingested pursuant to medical advice, or by substances the defendant did not know, nor should he have known, had a tendency to cause intoxication."[17]

The State objected to Dorsey's involuntary intoxication defense and to Dr. Craig's proposed testimony. First, the State argued that "transient mild delirium" was legally insufficient to qualify Dorsey for an involuntary intoxication defense. Second, the State argued that the theory that Dorsey had suffered from an adverse reaction to Zanaflex was based solely on Dorsey's own statements to Dr. Craig, which the State argued were inadmissible hearsay.

The court ultimately ruled that an adverse reaction to prescription medication was a legally adequate basis for proceeding with an involuntary intoxication defense. But in the absence of a statutory provision specifically allowing the defense as a form of excuse, the court concluded, based on the Alaska Supreme Court's decision in *Evans v. State*, that Dorsey's proposed involuntary intoxication defense was a subset of an insanity defense.[18] The court reasoned that in Alaska, a person "is not absolved of criminal responsibility" under AS 12.47.010 (Alaska's insanity defense statute) based on the notion that the person cannot conform their conduct to the requirements of the

---

[16]   Dorsey based his proposed instructions, in part, on the Model Penal Code § 2.08.

[17]   For this definition, Dorsey cited the Model Penal Code § 2.08(5)(b) (Am. Law Inst., Proposed Official Draft 1962), defining "self-induced intoxication" as: "intoxication caused by substances that the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know, unless he introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of crime."

[18]   *See Evans v. State*, 645 P.2d 155 (Alaska 1982).

law.[19]  The court therefore ruled that it would instruct the jury that, if the jury accepted Dorsey's involuntary intoxication defense, it was required to find Dorsey "guilty but mentally ill" under AS 12.47.030.

To preserve the record and inform any specific rulings on admissibility, the court then took testimony from Dr. Craig outside the presence of the jury.  Dr. Craig testified that he had conducted a two-day examination of Dorsey; this examination included neuropsychological testing as well as an interview with Dorsey about his memory of the incident and his personal history.  Dr. Craig testified, consistent with the defense attorney's proffer, that, on the day of the incident, Dorsey was suffering from an adverse reaction to Zanaflex, which Dorsey reported to have taken for the first time about two hours before the incident.  According to Dr. Craig, the Zanaflex put Dorsey into a "confusional" and "unusually disinhibited" state that Dr. Craig characterized as "transient mild delirium."  This delirium, Dr. Craig testified, was "sufficient to disinhibit [Dorsey] to the point that he engaged in [the charged] behavior."

Dr. Craig compared Dorsey's condition to intoxication from the consumption of alcohol, which Dr. Craig also described as a form of "transient delirium." Dr. Craig distinguished a "severe delirium," under which someone is "so drunk that they're in a blackout state," with the "mild delirium" that Dorsey had suffered, which Dr. Craig likened to the disinhibition one might experience after drinking between two and four martinis.

Dr. Craig testified that there was "no question" that Dorsey's behavior in the grocery store was purposeful — that Dorsey "was purposefully leaning over . . . and purposefully looking under [S.W.'s] skirt" — and that, if Dorsey did touch S.W., he

---

[19]  *See Hart v. State*, 702 P.2d 651, 654-58 (Alaska App. 1985) (explaining the removal of the "irresistible impulse" or volitional prong from the insanity statute to the "guilty but mentally ill" statute).

would have known he was doing so. Despite Dorsey's awareness of his actions, however, Dr. Craig claimed that Dorsey's state of delirium, when superimposed upon his preexisting neuropsychological deficits, placed Dorsey in a condition in which he "lacked the substantial capacity to conform his behavior to the requirements of the law."

Following Dr. Craig's testimony, and based on the court's prior ruling that a successful involuntary intoxication defense would trigger a "guilty but mentally ill" verdict, Dorsey declined to pursue his involuntary intoxication defense. Dorsey's first trial resulted in a mistrial.

At Dorsey's second trial, the issue of involuntary intoxication and Dr. Craig's testimony again arose. The judge presiding over the second trial agreed with the prior judge's ruling that if the defense pursued involuntary intoxication, the jury would be instructed on the verdict of "guilty but mentally ill." Dorsey again elected not to pursue the defense, and he was convicted at his second trial.

*Why we conclude that the trial court erred in ruling that Dorsey's involuntary intoxication defense triggered the need for a "guilty but mentally ill" verdict form, but that this error was harmless*

On appeal, Dorsey argues that the trial court erred in ruling that, if Dorsey pursued an involuntary intoxication defense, then the court would instruct the jury that, if it accepted the defense, it must return a verdict of "guilty but mentally ill."

Under AS 12.47.030(a), a defendant is "guilty but mentally ill" if, at the time the defendant engaged in the criminal conduct, "the defendant lacked, as a result of a mental disease or defect, the substantial capacity either to appreciate the wrongfulness of that conduct or to conform that conduct to the requirements of law." A defendant who is found "guilty but mentally ill" is not relieved of criminal responsibility and is actually subject to harsher consequences than a defendant who is simply found "guilty" of the

same offense.[20]  For example, although the Department of Corrections is required to provide mental health treatment to a "guilty but mentally ill" defendant during the term of incarceration, the defendant is ineligible for parole or furlough while the need for treatment continues.[21]

Dorsey's attorneys suggested that Dr. Craig would testify that due to an adverse reaction to Zanaflex, Dorsey was unable to conform his conduct to the requirements of the law, and the trial court appears to have relied on this information as the basis for determining that AS 12.47.030 applied.

The State concedes that a "guilty but mentally ill" verdict form was inappropriate under the circumstances of Dorsey's case.  We conclude that this concession is well-founded.[22]

The insanity statute, the diminished capacity statute, and the "guilty but mentally ill" statute — codified at AS 12.47.010 to AS 12.47.030 — are all premised on the notion that the defendant was suffering from a "mental disease or defect" at the time of the charged conduct.  This phrase has a specific definition under Alaska law.  For purposes of AS 12.47, "mental disease or defect" is defined, in pertinent part, as "a

---

[20]  *See State v. Clifton*, 315 P.3d 694, 702-04 (Alaska App. 2013) (discussing the additional parole restrictions imposed on a person who is found "guilty but mentally ill").

[21]  *See Palmer v. State*, 379 P.3d 981, 988 (Alaska App. 2016) (discussing the conditions of a "guilty but mentally ill" verdict, as set out in AS 12.47.050).

[22]  *See Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) (requiring an appellate court to independently assess whether a concession of error "is supported by the record on appeal and has legal foundation").

disorder of thought or mood that substantially impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."[23]

In the 1982 commentary accompanying the enactment of the current insanity statute, the legislature explained that the statutory definition of "mental disease or defect" was "intended to include those major mental disorders such as schizophrenia, severe mood disorders, or profound organic mental disorders which substantially impair a person's ability to perceive reality or adapt to it."[24]  The legislature further explained that "[t]here are many mental disorders defined in psychiatry . . . which, though they affect behavior, are not of the severity or magnitude necessary to qualify" as a mental disease or defect for purposes of AS 12.47.[25]  Examples of these disorders are "drug addictions, posttraumatic stress disorders, conduct disorders, dissociative disorders, psychosexual disorders, and impulse control disorders."[26]

In this case, Dr. Craig opined that, at the time Dorsey engaged in sexual contact with S.W., he was experiencing a "mild transient delirium" from the ingestion of the prescription muscle relaxant, Zanaflex.  Dr. Craig analogized this "mild" delirium to the level of delirium that a person might experience after consuming between two and four martinis.  The delirium was fleeting in nature and caused Dorsey to experience a "clouding of consciousness" and to behave in a "disinhibited manner."  Given the legislature's examples of what does, and does not, qualify as a "mental disease or

---

[23]   AS 12.47.130(5).  The term "'mental disease or defect' also includes intellectual and developmental disabilities that result in significantly below average general intellectual functioning that impairs a person's ability to adapt to or cope with the ordinary demands of life."  *Id.*

[24]   1982 House Journal Supp. No. 64 (June 2), at 8.

[25]   *Id.*

[26]   *Id.*

defect," and the fact that this definition is intended to include only "major mental disorders," we agree with the parties that the "mild transient delirium" diagnosed by Dr. Craig does not meet the statutory definition. We therefore conclude that the court erred in equating Dorsey's proposed involuntary intoxication defense with a "guilty but mentally ill" verdict.

But the court's error does not necessarily mean that Dorsey was entitled to present the defense he proposed. Given the way Dorsey framed his defense, and the evidence he presented in support of it, we agree with the court that Dorsey's proposed defense did not absolve Dorsey of criminal liability under our law, and he was therefore not entitled to the jury instructions he proposed.

The defense of involuntary intoxication is not codified in Alaska law, but both the Alaska Supreme Court and this Court have recognized it as a common law defense. In 1982, in *Evans v. State*, the Alaska Supreme Court wrote, "The case law is . . . clear that involuntary intoxication does constitute a valid defense. This is most clearly shown when the intoxication is the result of the force, duress, fraud, or contrivances of another."[27] Twenty years later, we cited *Evans* for the proposition that Alaska case law recognizes the defense of involuntary intoxication.[28] But we also recognized that the contours of this defense have not been clearly defined under Alaska law.[29]

Since then, we have addressed claims of involuntary (or unwitting) intoxication resulting from the ingestion of prescription or other medication in two separate contexts.

---

[27] *Evans v. State*, 645 P.2d 155, 159 (Alaska 1982) (citation omitted).

[28] *State v. Simpson*, 53 P.3d 165, 167 (Alaska App. 2002).

[29] *See id.*

One situation has arisen when the defendant claimed that his conduct was involuntary — that is, that he did not consciously commit the *actus reus* of the charged offense. In *State v. Simpson*, we recognized that the voluntariness of a defendant's conduct is an "implicit element of all crimes," and if it "is actively disputed, the government must prove it."[30] This requirement is "grounded in the constitutional requirement that the State prove all elements of a crime beyond a reasonable doubt,"[31] for there can be no criminal liability without a voluntary act.[32]

Thus, in *Wagner v. State*, where the defendant claimed that his consumption of zolpidem (a sedative sold under the brand name Ambien) caused him to sleep-drive, we recognized the validity of Wagner's proposed involuntariness defense on the ground that unconscious conduct negated the crime's *actus reus*.[33] We held that Wagner would have a valid defense to the charges of driving under the influence and driving with a revoked license if "(1) he took a prescription dose of zolpidem, (2) he was rendered unconscious by this drug and engaged in sleep-driving, and (3) he neither knew nor had reason to anticipate that the drug would have this effect."[34]

A second situation has arisen when the defendant claimed that he was unaware of the intoxicating nature of the substance he ingested, negating a culpable mental state associated with an essential element of the charged offense. In *Solomon v.*

---

[30]   *Id.* at 169.

[31]   *Palmer v. State*, 379 P.3d 981, 989 (Alaska App. 2016).

[32]   AS 11.81.600(a) ("The minimal requirement for criminal liability is the performance by a person of conduct that includes a voluntary act or the omission to perform an act that the person is capable of performing."); *State v. Hazelwood*, 946 P.2d 875, 879 (Alaska 1997) ("[I]t is always a defense to prosecution that the conduct was not voluntary.").

[33]   *Wagner v. State*, 390 P.3d 1179, 1182 (Alaska App. 2017).

[34]   *Id.*

*State*, the defendant admitted that he drove while intoxicated but claimed that he had ingested a substance that he did not know was an intoxicant (Nyquil cold medicine).[35] We held that, in a prosecution for driving under the influence, a defendant is entitled to a jury instruction on involuntary intoxication if "there is evidence that the defendant unwittingly became intoxicated because of a reasonable, non-negligent mistake about the intoxicating nature of the beverage or substance they ingested."[36]

As framed in the trial court, Dorsey's proposed defense did not fall into either of these categories — *i.e.*, negation of the *actus reus* due to an unconscious act, or negation of a *mens rea* requirement. Dorsey's expert, Dr. Craig, opined that Dorsey's conduct was "purposeful" — that Dorsey was aware of what he was doing and that, to the extent he engaged in sexual contact, he did so knowingly. In other words, Dorsey was conscious throughout the incident. As a result, Dorsey's attorney specifically disclaimed any argument that Dorsey acted involuntarily or did not possess the necessary culpable mental state, stating that he most likely "knew what he was doing." And unlike in a driving under the influence case, where a defendant may defend on the ground that he made a reasonable, non-negligent mistake about the intoxicating nature of the substance he consumed, the ingestion of an intoxicant is not an essential element of second-degree sexual assault.

---

[35]  *Solomon v. State*, 227 P.3d 461, 462 (Alaska App. 2010).

[36]  *Id.* at 468; *see also Commonwealth v. Wallace*, 439 N.E.2d 848, 853 (Mass. App. 1982) (holding that "[t]he defendant, on a new trial, will be entitled to an instruction that he may not be convicted" in a driving while intoxicated case "unless he knew or had reason to know of the possible effects of the drug on his driving abilities"); *cf. Commonwealth v. Smith*, 831 A.2d 636, 640 (Pa. App. 2003) (holding that, where the defendant voluntarily consumed alcohol and prescription medication without regard for its "synergistic effect," the defendant did not establish an involuntary intoxication defense to driving under the influence).

In short, Dorsey did not argue that his involuntary intoxication called into question any of the essential elements of the charged offense — either the *actus reus* or the applicable mental states.

Instead, Dorsey essentially argued that, although he committed the conduct with which he was charged, his behavior should be *excused* because, due to an adverse reaction to prescription medication, he could not conform his conduct to the requirements of the law.[37] But as we recognized in *Simpson*,[38] leading commentators in the criminal law have explained that the excuse form of the involuntary intoxication defense is only available if the intoxication "puts the defendant in a state of mind which resembles insanity" under that jurisdiction's legal test for insanity.[39] Consistent with this commentary, multiple jurisdictions have held that involuntary intoxication constitutes a defense (separate and apart from a claim that the defendant acted unconsciously or was

---

[37] *Cf. Hart v. State*, 702 P.2d 651, 655-56 (Alaska App. 1985) (distinguishing the insanity statute under AS 12.47.010 from a claim of unconscious or involuntary action and a claim that the defendant could not form the culpable *mens rea*).

[38] *See State v. Simpson*, 53 P.3d 165, 167 (Alaska App. 2002).

[39] 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.5(g), at 66 (3d ed. 2017) ("Involuntary intoxication . . . does constitute a defense if it puts the defendant in such a state of mind, e.g., so that he does not know the nature and quality of his act or know that his act is wrong, in a jurisdiction which has adopted the *M'Naghten* test for insanity."); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law*, at 1005 (3d ed. 1982) ("[The defendant] does not have criminal capacity if his mind is so deranged for the moment that he is unable 'to know what he is doing and that it is wrong,' and if the particular jurisdiction goes beyond the right-wrong rule in dealing with insanity it should do likewise in cases of involuntary intoxication." (citations omitted)).

unable to form the necessary *mens rea*) only when the intoxication placed the defendant in a state of mind sufficient to meet that jurisdiction's test for insanity.[40]

The problem for Dorsey is that Alaska's definition of insanity under AS 12.47.010 no longer includes those defendants who lack the substantial capacity to conform their conduct to the requirements of the law — the so-called "volitional" prong of the American Law Institute's test for insanity in the Model Penal Code.

Under the A.L.I. "substantial capacity" test for insanity, a defendant is absolved of criminal liability if, as a result of a mental disease or defect, the defendant

---

[40] *United States v. F.D.L.*, 836 F.2d 1113, 1116-17 (8th Cir. 1988) (recognizing that courts that have addressed the defense of involuntary intoxication have defined it "in essentially the same terms as insanity"); *Brancaccio v. State*, 698 So.2d 597, 599 (Fla. App. 1997) ("Generally speaking, an accused may be completely relieved of criminal responsibility if, because of involuntary intoxication, he was temporarily rendered legally insane at the time he committed the offense.") (internal quotation omitted); *Heyward v. State*, 470 N.E.2d 63, 64 (Ind. 1984) (holding that, to operate as a complete defense excusing a criminal act, involuntary intoxication "must have at least temporarily put the accused into a state of mind which resembled insanity"); *People v. Wilkins*, 459 N.W.2d 57, 60 (Mich. App. 1990) (holding that "involuntary intoxication is a defense included within the ambit of the insanity defense"); *City of Minneapolis v. Altimus*, 238 N.W.2d 851, 858 (Minn. 1976) (holding that, in the absence of an express statute specifically addressing involuntary intoxication, the defense "should be allowed only in case[s] where the defendant at the time of committing the alleged criminal act was laboring under such a defect of reason because of a mental deficiency caused by involuntary intoxication as not to know the nature of his act, or that it was wrong"); *Jones v. State*, 648 P.2d 1251, 1258 (Okla. App. 1982) ("Involuntary intoxication is a complete defense where the defendant is so intoxicated that he is unable to distinguish between right and wrong, the same standard as applied in an insanity defense."); *State v. Mriglot*, 564 P.2d 784, 786 (Wash. 1977) (en banc) ("Since involuntary intoxication acts to excuse the criminality of an act, it must rise to the level of insanity, which in this jurisdiction is determined by the M'Naghten test."), *discussed in State v. Stacy*, 326 P.3d 136, 145 (Wash. App. 2014); *but see People v. Garcia*, 113 P.3d 775, 783 (Colo. 2005) (holding that involuntary intoxication and insanity are legally separate and distinct defenses, where both were set out separately in Colorado statute).

falls within one of two prongs.[41]  The first prong is cognitive:  that the defendant lacks the substantial capacity to appreciate the wrongfulness of his conduct.[42]  The second prong is volitional:  that the defendant lacks the substantial capacity to conform his conduct to the requirements of the law.[43]

Prior to 1982, Alaska's insanity statute codified both prongs of the A.L.I. "substantial capacity" test.[44]  But in 1982, the legislature dramatically narrowed Alaska's definition of insanity and created a new category of "guilty but mentally ill" defendants; this new category "includes everyone who previously would have been relieved from criminal responsibility by virtue of the A.L.I. test."[45]

Accordingly, those defendants who satisfy the "volitional" prong of the A.L.I. test — i.e., those who, as a result of a mental disease or defect, lacked the substantial capacity to conform their conduct to the requirements of the law — are no longer absolved of criminal liability (and found not guilty by reason of insanity); they instead fall into the category of "guilty but mentally ill."[46]

Here, Dorsey claimed that he was entitled to pursue an involuntary intoxication defense because he was unable to conform his conduct to the requirements

---

[41]  Model Penal Code § 4.01 (Am. Law Inst., Proposed Official Draft 1962); *see also* 1 Wayne R. LaFave, *Substantive Criminal Law* § 7.5(a), at 755-58 (3d ed. 2017).

[42]  Model Penal Code § 4.01(1).

[43]  *Id.*

[44]  *See* former AS 12.45.083(a) (pre-1982 version); *Schade v. State*, 512 P.2d 907, 912 (Alaska 1973); *Hart v. State*, 702 P.2d 651, 657 (Alaska App. 1985).

[45]  *Hart*, 702 P.2d at 657 (citing AS 12.47.030).

[46]  *See* AS 12.47.030.  Only those defendants who, as a result of a mental disease or defect, are "unable . . . to appreciate the nature and quality of [their criminal] conduct" qualify for the insanity defense under current law.  AS 12.47.010(a).

of the law after he unwittingly became intoxicated from his ingestion of Zanaflex. This assertion may have been legally sufficient to claim involuntary intoxication before the 1982 change in law, but the Alaska legislature has now determined that this type of irresistible impulse — even when it stems from a mental disease or defect — does not absolve a defendant of criminal liability. And, despite the general view that the excuse form of the involuntary intoxication defense relies on a jurisdiction's own legal test for insanity, the Alaska legislature has not enacted a separate statute addressing this type of involuntary intoxication defense in the wake of its statutory change to the insanity statute.[47]

We note that Dorsey's attorneys submitted proposed jury instructions that included the two prongs of the A.L.I. test for involuntary intoxication as set out in Section 2.08(4) of the Model Penal Code, and with those instructions, attached a copy of Model Penal Code Section 2.08.[48] But the Explanatory Note that accompanies this

---

[47] Some states have enacted such statutes. *See, e.g.*, *People v. Garcia*, 113 P.3d 775, 780 (Colo. 2005) (recognizing that the affirmative defense of involuntary intoxication is expressly set out in Colorado statute: "A person is not criminally responsible for his conduct if, by reason of intoxication that is not self-induced at the time he acts, he lacks capacity to conform his conduct to the requirements of the law." (quoting Colo. Rev. Stat. § 18-1-804(3)); *State v. Sette*, 611 A.2d 1129, 1136 (N.J. App. 1992) (recognizing that the affirmative defense of involuntary intoxication is expressly set out in New Jersey statute: "Intoxication which (1) is not self-induced or (2) is pathological is an affirmative defense if by reason of such intoxication the actor at the time of his conduct did not know the nature and quality of the act he was doing, or if he did know it, that he did not know what he was doing was wrong.") (quoting N.J. Stat. Ann. 2C:2-8d); *see also* Haw. Rev. Stat. § 702-230; 720 Ill. Comp. Stat. 5/6-3; Kan. Stat. Ann. § 21-5205(a).

[48] *See* Model Penal Code § 2.08(4) (Proposed Official Draft 1962) (providing that intoxication that is not self-induced is an affirmative defense "if by reason of such intoxication the actor at the time of his conduct lacks substantial capacity either to appreciate its criminality [wrongfulness] or to conform his conduct to the requirements of the law").

section of the Model Penal Code states that the involuntary intoxication defense is intended to be "coextensive with the defense of irresponsibility by reason of mental disease or defect" set out in Section 4.01 of the Model Penal Code.[49] This is the precise defense that our legislature has rejected for our own insanity statute. Given our rejection of the A.L.I. test for insanity, Dorsey's proposed involuntary intoxication defense was not a viable defense under Alaska law.[50]

(See *Mendenhall v. State*, 77 S.W.3d 815, 817-18 (Tex. Crim. App. 2002), where the Texas Court of Criminal Appeals reached a similar conclusion following the Texas legislature's amendment of the insanity statute to exclude the volitional prong of the A.L.I. test for insanity.)

On appeal, Dorsey reframes his defense as a *mens rea* defense. That is, Dorsey contends that he was entitled to argue that his unwitting intoxication negated the culpable mental states for second-degree sexual assault — *i.e.*, that he "knowingly" engaged in sexual contact and "recklessly" disregarded S.W.'s lack of consent. Dorsey notes that, at one point, the trial court stated that under Alaska law, intoxication does not negate the mental state of "knowingly," and he argues that the court failed to distinguish between voluntary intoxication and involuntary intoxication. In response, the State

---

[49] Model Penal Code § 2.08(4), Explanatory Note. The Model Penal Code makes clear that "[i]ntoxication does not, in itself, constitute mental disease," within the meaning of the defense of irresponsibility by reason of mental disease or defect — but that involuntary intoxication excuses a defendant's conduct "if the resulting incapacitation is *as extreme* as that which would establish irresponsibility had it resulted from mental disease." Model Penal Code § 2.08(3) & cmt. 3 (emphasis added).

[50] *See* Paul H. Robinson, 2 *Criminal Law Defenses* § 176(c), at 341 (1984 & Supp. 2020) ("If a person who suffers from a psychological disorder which does no more than to make lawful behavior difficult has no defense to [a] crime, an intoxicated person ought not to be in a better position even though his intoxication is involuntary.") (quoting M. Paulsen, *Intoxication as a Defense to Crime*, 1961 U. Ill. L.F. 1, 19 (1961)).

contends that evidence of intoxication — whether voluntary or involuntary — cannot negate the mental states of "knowingly" and "recklessly."

There is no dispute that a defendant cannot rely on *voluntary* intoxication to negate a mental state of "knowingly" or "recklessly."[51] But we have not previously decided whether evidence of involuntary or unwitting intoxication can negate these mental states.[52]

We have no need to reach this issue here. As we noted earlier, Dorsey's proposed jury instructions and arguments in the trial court make clear that he was not seeking to rely on involuntary intoxication to negate his mental state, but rather to excuse his conduct.

We acknowledge that, at one point, one of Dorsey's attorneys asserted that his proposed defense related to the culpable mental state. But in context, this appears to have been a reference to Dorsey's mental state generally, and not to any particular *mens rea* element of second-degree sexual assault. For example, the same attorney conceded that Dr. Craig would testify that Dorsey "knew what he was doing." Indeed, Dr. Craig himself testified (as part of Dorsey's offer of proof) that Dorsey's conduct was

---

[51]  *See* AS 11.81.630 (providing that "[v]oluntary intoxication is not a defense to a prosecution for an offense," although "evidence that the defendant was intoxicated may be offered . . . to negate an element of an offense that requires that the defendant *intentionally* cause a result" (emphasis added)).

[52]  In past cases, we have often specified "voluntary" intoxication when referring to the intoxication preclusion set out in the definitions of "knowingly" and "recklessly" in AS 11.81.900(a). *See, e.g.*, *Waterman v. State*, 342 P.3d 1261, 1269 (Alaska App. 2015); *Jager v. State*, 748 P.2d 1172, 1178 (Alaska App. 1988); *Wright v. State*, 656 P.2d 1226, 1227 (Alaska App. 1983); *see also Jeffries v. State*, 169 P.3d 913, 920 (Alaska 2007) (recognizing that AS 11.81.900(a)(2) "defines the culpable mental state 'knowingly' to require a finding of knowing conduct when the defendant's failure to perceive surrounding circumstances results from voluntary intoxication").

"purposeful" — that Dorsey was aware of what he was doing and that, to the extent he engaged in sexual contact, he did so knowingly. (Indeed, given Dr. Craig's testimony, the judge who presided over Dorsey's first trial found that Dorsey's purported intoxication was not relevant to negating the mental states of the charged offense.) And, as noted above, the jury instructions proposed by Dorsey presented the excuse form of the defense. Thus, any potential error by the trial court in ruling that involuntary intoxication cannot negate the mental states of "knowingly" and "recklessly" does not require reversal of Dorsey's conviction.

In summary, the legislature's decision to move the volitional prong of the A.L.I. test from the insanity statute to the "guilty but mentally ill" statute contributed to the trial court's ruling that Dorsey's involuntary intoxication defense, which he offered as a form of excuse, would trigger a "guilty but mentally ill" jury instruction. Because Dorsey was not suffering from a qualifying "mental disease or defect," this was incorrect. But the court was correct that Dorsey's defense, as presented, did not absolve him of criminal liability under existing Alaska law. We therefore conclude that the error in the trial court's ruling was harmless beyond a reasonable doubt.[53]

---

[53] Because of our resolution of this claim, we need not address the State's argument that Dorsey's involuntary intoxication defense improperly rested on Dorsey's inadmissible hearsay statements to Dr. Craig that he had taken Zanaflex for the first time a few hours before the sexual assault.

*Why we conclude that we must remand for reconsideration of Dorsey's proposed mitigating factor that his conduct was "among the least serious conduct included in the definition of the offense"*

As a first felony offender, Dorsey faced a presumptive sentencing range of 5 to 15 years for his second-degree sexual assault conviction.[54] He asked the court to find that his conduct was "among the least serious conduct included in the definition of the offense" under AS 12.55.155(d)(9), but the court rejected this proposed mitigator. Because the court did not find any other mitigating factors, the court was not authorized to impose a sentence below the low end of the presumptive range.[55]

In rejecting the "least serious" mitigator, the sentencing court found "because the victim was a stranger and because [the incident] occurred in [the] daytime in a location where people have a right to expect a certain amount of safety, that in fact [Dorsey's act] was extremely serious conduct." In addition, the judge (who did not preside over either of Dorsey's trials) stated that he had reviewed the trial testimony to get a sense whether he would consider Dorsey's conduct "not serious conduct."

But as we explained in *Simants v. State*, application of the (d)(9) mitigator to a particular sexual offense "does not mean that the [offense] is somehow 'not serious' or that the victim has not been harmed."[56] Instead, we explained that "the determination of the 'seriousness' of the defendant's conduct is a relative one — the defendant's conduct is considered 'among the least serious' only in contrast to the range of conduct included within the definition of the offense."[57]

---

[54] AS 12.55.125(i)(3)(A).

[55] AS 12.55.155(a)(1).

[56] *Simants v. State*, 329 P.3d 1033, 1036 (Alaska App. 2014).

[57] *Id.*

Here, the sentencing court did not conduct this analysis. That is, the court did not compare Dorsey's conduct, and the factual circumstances surrounding that conduct, to the range of conduct included within the definition of the offense.

The question was not, as the court suggested, whether Dorsey's conduct was "not serious." The question was whether the conduct in this case — conduct that involved hand-to-genital contact in a public place over the course of several seconds — was *among* the least serious when compared to the range of conduct included within the definition of the offense.[58]

Because the court did not employ the proper analysis when evaluating this mitigator, we remand Dorsey's case for reconsideration of whether Dorsey's conduct was, under AS 12.55.155(d)(9), among the least serious within the definition of second-degree sexual assault.

*Conclusion*

We AFFIRM Dorsey's conviction. We VACATE the court's denial of the AS 12.55.155(d)(9) mitigator at sentencing, and we REMAND Dorsey's case to the superior court for reconsideration of this mitigator. We do not retain jurisdiction.

---

[58] *See Michael v. State*, 115 P.3d 517, 521 (Alaska 2005) (Bryner, J., concurring) ("[B]y any realistic measure, Michael's overall conduct ranks *among* the least serious within the class of defendants actually convicted of first-degree sexual assault.") (emphasis in original); *Voyles v. State*, 2017 WL 2709730, at *5 (Alaska App. June 21, 2017) (unpublished) (concluding that the defendant's "single, minimal act of digital penetration . . . . qualified as *among* the least serious conduct included in the definition of first-degree sexual abuse of a minor") (emphasis in original).